NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff v. BRENDA KAY MABE, et al, Defendants

JESSE WILLARD SCOTT, JR., Individually, as the Parent of Lucinda Sue Scott, and as the Administrator of the Estate) of Carolyn Mabe Scott, and LUCINDA SUE SCOTT, by her Guardian ad Litem, Anne Connolly, Third-Party Plaintiffs v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Third-Party Defendant

BRENDA KAY MABE, ROGER LEE MABE, KIMBERLY HOPE MABE, a minor b/h/g/a/l S. MARK RABIL and HEATHER DORA MABE, a minor b/h/g/a/l GREGORY W. SCHIRO, Plaintiffs v. ROBERT LEONARD GREGORY, and MARY ELIZABETH WILSON, Defendants

JESSE WILLARD SCOTT, JR., Individually as the parent of LUCINDA SUE SCOTT and as the Administrator of the Estate of Carolyn Mabe Scott, and LUCINDA SUE SCOTT, b/h/g/a/l ANNE CONNOLLY, Plaintiffs v. ROBERT LEONARD GREGORY, MARY ELIZABETH WILSON, and JODY RAY BULLINS, Defendants

No. 312PA94

(Filed 9 February 1996)

### 1. Insurance § 690 (NCI4th)— automobile accident—prejudgment interest—beyond policy limits of liability—defined by policy as damages rather than costs

In an action arising from an automobile accident, the Court of Appeals correctly limited Nationwide's responsibility to pay prejudgment interest to its $300,000 UIM limit of liability where the parties entered consent judgments exceeding the limit of liability; under *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, prejudgment interest is an element of damages; Nationwide can only be liable for prejudgment interest if it was contractually obligated; and the definition clause in Nationwide's policy expressly including prejudgment interest as an element of damages controls the determination of whether prejudgment interest is payable beyond the policy limits. N.C.G.S. § 24-5.

**Am Jur 2d, Automobile Insurance § 428.**

**Validity and construction of state statute or rule allowing or changing rate of prejudgment interest in tort actions. 40 ALR4th 147.**

**Liability of insurer for prejudgment interest in excess of policy limits for covered loss. 23 ALR5th 75.**

NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

2. Insurance § 532 (NCI4th)— automobile accident—UIM coverage—owned vehicle exclusion—contrary to statute

The owned vehicle exclusion in a UIM clause was in violation of N.C.G.S. § 20-279.21(b)(4) and is invalid where Carolyn Scott was killed in an automobile accident; a business automobile policy had been issued to her husband covering a Mack flatbed truck and a low-boy trailer used in farming operations; and it is clear that the policy by its language does not extend coverage to Ms. Scott or her daughter, who was riding with her, because Ms. Scott was driving a car owned by Mr. Scott which was not a covered automobile under the policy. It is undisputed that Mr. Scott is the named insured and that his wife and daughter are members of the first class under the UIM clause of the policy. The Motor Vehicle Safety and Financial Responsibility Act is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished; the purpose of the Act is to allow an insured injured party to recover damages when the tortfeasor has insurance, but his coverage is in an insufficient amount; and it is clear that UIM is person-oriented.

Am Jur 2d, Automobile Insurance § 322.

Uninsured and underinsured motorist coverage: recoverability, under uninsured or underinsured motorist coverage, of deficiencies in compensation afforded injured party by tortfeasor's liability coverage. 24 ALR4th 13.

Uninsured motorist coverage: validity of exclusion of injuries sustained by insured while occupying "owned" vehicle not insured by policy. 30 ALR4th 172.

Validity, under insurance statutes, of coverage exclusion for injury to or death of insured's family or household members. 52 ALR4th 18.

3. Insurance § 528 (NCI4th)— automobile accident—UIM coverage—stacking

Neither interpolicy stacking nor intrapolicy stacking were available where Carolyn Scott was killed in an automobile accident while driving a car owned by her husband which was not covered by a business automobile policy issued to her husband which covered the Mack flatbed truck and low-boy trailer he used in his farming operations. Both inter- and intrapolicy stacking are available only when the coverage is nonfleet and the vehicle cov-

ered is of the private passenger type. Intrapolicy stacking is not available because the trailer does not have a pick-up body and is not a delivery sedan or panel truck, as required under N.C.G.S. § 58-40-10, and interpolicy stacking is not available for the Mack flatbed for the same reasons. Although the Scotts contended that the truck is a private passenger vehicle because passengers can ride in the cab and because it is used exclusively in farming, thereby falling within the statutory farming exception, those factors are considered only after the vehicle meets the threshold test of having a pickup body or being a delivery sedan or panel truck. Moreover, common sense indicates that the legislature was referring to vehicles used every day by the citizens of the state, and the provision of an exception for farming recognized the reality that a pickup serves as both a private passenger vehicle and a work vehicle.

**Am Jur 2d, Automobile Insurance §§ 322, 326, 329.**

**Combining or "stacking" uninsured motorist coverages provided in single policy applicable to different vehicles of individual insured. 23 ALR4th 12.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 115 N.C. App. 193, 444 S.E.2d 664 (1994), reversing in part and affirming in part as modified the order and judgment entered 28 September 1992, by Davis (James C.), J., in Superior Court, Stokes County. Heard in the Supreme Court 13 April 1995.

*Petree Stockton, by James H. Kelly, Jr., and Edwin W. Bowden, for plaintiff-appellee Nationwide Mutual Insurance Company.*

*Metcalf, Vrsecky & Beal, by Anthony J. Vrsecky, for defendant-appellants Brenda Kay Mabe, Roger Lee Mabe, Kimberly Hope Mabe, and Heather Dora Mabe.*

*Theodore M. Molitoris for defendant and third-party plaintiff-appellant/appellee Lucinda Sue Scott by her Guardian ad Litem, Anne Connolly; and John E. Gehring for defendant and third-party plaintiff-appellant/appellee Jesse Willard Scott, Jr., as the Administrator of the Estate of Carolyn Mabe Scott.*

*Pinto, Coates & Kyre, L.L.P., by Paul D. Coates and David L. Brown, for defendant-appellant North Carolina Farm Bureau Mutual Insurance Company.*

## NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

ORR, Justice.

On 16 February 1990, Lucinda Sue Scott, Brenda Kay Mabe, Kimberly Hope Mabe, and Heather Dora Mabe were passengers in a vehicle driven by Carolyn Mabe Scott travelling down North Carolina Highway 89 when their vehicle was struck head-on by a 1989 Toyota truck. As a result of the accident, Carolyn Mabe Scott was killed, and the remaining passengers all suffered extensive injuries. The occupants of the Toyota truck were Robert Leonard Gregory and Jody Ray Bullins. While it is unclear from the record who was driving the truck, the parties consented that judgment would be entered against Gregory.

On 4 May 1990, a complaint was filed on behalf of Brenda Kay Mabe, Roger Lee Mabe, Kimberly Hope Mabe, and Heather Dora Mabe ("the Mabes") against Gregory and Gregory's mother, Mary Elizabeth Wilson, in whose name the Toyota truck was titled. The complaint alleged that Gregory was driving the truck with his mother's permission, that he was driving in a negligent manner while intoxicated, and that his use of the truck fell within the family-purpose doctrine. On 24 September 1990, Jesse Willard Scott, Jr., and his daughter, Lucinda Sue Scott, ("the Scotts") filed a complaint against Gregory and Wilson alleging the same causes of action as in the Mabes' complaint.

Mary Elizabeth Wilson had a liability policy on the Toyota truck issued by Nationwide Mutual Insurance Company ("Nationwide"), providing coverage in the amount of $100,000 per person and $300,000 per accident. Jesse Willard Scott had in effect a Nationwide liability insurance policy which contained underinsured motorist (UIM) coverage of $100,000. Mr. Scott also had in effect a business automobile policy issued by North Carolina Farm Bureau Mutual Insurance Company ("Farm Bureau") which provided UIM coverage of $100,000. This policy provided $100,000 liability coverage each on a 1964 Mack flatbed truck and a 1978 low-boy trailer, both titled in Scott's individual name. These vehicles were used by Scott exclusively in his farming operations. Their primary purpose was to transport his tractor from farm to farm.

On 14 March 1991, Nationwide, in an attempt to settle the claims arising out of the accident, offered to pay its policy limits of $300,000 to the claimants. Assuming that the potential claims exceeded the extent of its policy limit, Nationwide proposed a pro rata distribution in the following amounts and conditioned settlement upon concurrent agreement by all of the claimants:

| | |
|---|---|
| Estate of Carolyn Scott | $ 35,000 |
| Lucinda Sue Scott (Minor) | $ 42,600 |
| Heather Dora Mabe (Minor) | $ 18,380 |
| Kimberly Hope Mabe (Minor) | $100,000 |
| Brenda Kay Mabe | $100,000 |
| Julie Harger | $ 2,040 |
| Jody R. Bullins | $ 1,930 |

The Scotts were unwilling to give their unconditional acceptance because if they were unable to obtain UIM coverage from other sources, they felt they were entitled to a larger portion of Nationwide's liability coverage. Accordingly, on 5 July 1991, Nationwide filed an interpleader declaratory judgment action and named all of the claimants as defendants. Nationwide then tendered its $300,000 policy limits to the court and asked for an order declaring that it had satisfied its policy obligations. Nationwide contended in its interpleader action that it did not owe any prejudgment interest to the claimants because Nationwide had already paid out its entire $300,000 limit of liability.

On 18 September 1991, the Scotts filed a third-party complaint in the interpleader action, naming Farm Bureau as a third-party defendant. The Scotts alleged in their third-party complaint that Farm Bureau refused to negotiate the "division of the initial liability policies in consideration for the underinsured motorist coverage [of $100,000] and on occasion has denied that this coverage even affords the stated underinsured insurance coverage." Farm Bureau filed an answer to the third-party complaint on 27 November 1991 denying that it had any coverage on the Scotts arising out of the accident in question. Specifically, Farm Bureau alleged as follows: .

The policy issued by North Carolina Farm Bureau Mutual Insurance Company covered a 1964 Mack flatbed vehicle which was not a private passenger automobile, and the policy issued by North Carolina Farm Bureau Mutual Insurance Company was a business auto policy which covered . . . only those vehicles listed on the policy, and excluded coverage for all other vehicles, and since the defendants and third-party plaintiffs were not occupying the covered vehicle under the North Carolina Farm Bureau Mutual Insurance Company policy, then such coverage for the operation of any other vehicles is excluded under the Farm Bureau policy, and therefore, Farm Bureau provides no coverage

NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

to the defendants and third-party plaintiffs as a result of this accident.

All claimants subsequently moved for summary judgment, and a hearing was held at the 8 September 1992 Civil Session of Superior Court, Stokes County. Mediation followed, resulting in all parties entering into a consent judgment on 28 September 1992 for damages in the following amounts:

| | |
|---|---|
| Estate of Carolyn Mabe Scott | $400,000 |
| Lucinda Sue Scott | $125,000 |
| Brenda Kay Mabe | $500,000 |
| Kimberly Hope Mab   by her Guardian ad Litem S. Mark Rabil | $600,000 |
| Heather Dora Mabe, by her Guardian ad Litem Gregory W. Schiro | $  40,000 |
| Roger Lee Mabe | $  15,000 |

Based on these amounts, the parties agreed to apportion the $300,000 liability coverage provided by Nationwide on the 1989 Toyota pickup truck belonging to Mary Elizabeth Wilson as follows:

| | |
|---|---|
| Jesse Willard Scott, Jr., as the Administrator of the Estate of Carolyn Mabe Scott | $  55,040 |
| Lucinda Sue Scott, by her Guardian ad Litem Anne Connolly | $  29,280 |
| Brenda Kay Mabe | $100,000 |
| Kimberly Hope Mabe, by her Guardian ad Litem S. Mark Rabil | $  66,667 |
| Blue Cross and Blue Shield for expenses of Kimberly Hope Mabe | $  33,333 |
| Heather Dora Mabe, by her Guardian ad Litem Gregory W. Schiro | $    7,333 |
| Blue Cross and Blue Shield for expenses of Heather Dora Mabe | $    3,667 |
| Julie Harger | $      780 |
| Roger Lee Mabe | $    3,900 |
| TOTAL | $300,000 |

Nationwide paid the claimants their pro rata share of liability coverage as agreed upon in the consent judgment.

The entry of the consent judgment and the subsequent pro rata distribution of Nationwide's liability coverage left only two issues to

be determined by the trial court: (1) whether Nationwide owed pre-judgment interest, and (2) the extent of Farm Bureau's UIM coverage. After making findings of fact and conclusions of law, the trial court ordered that Nationwide pay prejudgment interest to each of the claimants based on their respective pro rata shares of the $300,000 liability coverage from the date each complaint was filed up to the date of judgment. The trial court further granted the Scotts' motion for summary judgment concerning the UIM coverage in Mr. Scott's Nationwide policy; ordered that Nationwide's separate limit of liability available to Lucinda Scott and the Carolyn Scott estate was $100,000 less the primary liability coverage already paid; and ordered that based on the UIM provision, Farm Bureau's separate limit of liability available to Lucinda Scott and the Carolyn Scott estate was $200,000 less the primary coverage and Nationwide's UIM coverage already paid. Nationwide objected and excepted to entry of the order with respect to the payment of prejudgment interest. The claimants objected and excepted to the entry of the order concerning the amount of Nationwide's liability for prejudgment interest. Farm Bureau objected and excepted to entry of the order as to coverage of its policy. All parties gave timely notice of appeal to the Court of Appeals.

The Court of Appeals reversed the trial court on the issue of pre-judgment interest, holding that Nationwide does not owe the claimants any prejudgment interest over and above its liability limit of $300,000 because Nationwide's limit of liability for "damages" expressly includes "prejudgment interest." The Court of Appeals also affirmed in part, as modified, on the issue of UIM coverage, holding that although the owned vehicle exclusion in the UM/UIM section of the Farm Bureau policy was clear and unambiguous, the exclusion violated the North Carolina Motor Vehicle Safety and Financial Responsibility Act ("the Financial Responsibility Act"), N.C.G.S. ch. 20, art. 9A (1989), and was, therefore, unenforceable. Consequently, in determining whether the Scotts were entitled to stack their UIM coverage as provided in the Farm Bureau policy, the court had to first determine whether the vehicles listed in the policy, a low-boy trailer and 1964 Mack truck, were "private passenger motor vehicles." The Court of Appeals held that the low-boy trailer was not a private passenger motor vehicle; therefore, intrapolicy stacking would not be allowed. The court concluded that the extent of Farm Bureau's liability was $100,000. While the court raised the question as to whether the Mack truck listed in Mr. Scott's Farm Bureau policy was a "private

passenger motor vehicle," the court did not discuss the status of the Mack truck and whether interpolicy stacking was allowed, although the decision could be read to impliedly allow coverage of the Mack truck. From the Court of Appeals' decision, we granted discretionary review.

## I.

### Prejudgment Interest

[1] The first issue presented in this appeal by the Mabes and the Scotts is whether the Court of Appeals erred in holding that Nationwide did not owe prejudgment interest, having paid in full its stated liability policy limits of $300,000. Claimants contend that Nationwide owes prejudgment interest from the date of the filing of their complaint, 24 September 1990, to the date the judgment was satisfied, 23 September 1992, based on the stipulated judgment values of $125,000 to Lucinda Scott and $400,000 to the Carolyn Scott estate. They argue (1) that in its policy, Nationwide contractually agreed to pay "all costs taxed against the insured" in addition to its limits of liability; (2) that Nationwide's policy is ambiguous in that it contains conflicting provisions regarding prejudgment interest that should be construed against Nationwide; and (3) that public policy considerations should mandate reversal of the Court of Appeals' decision regarding prejudgment interest. Nationwide contends that this Court should affirm the decision of the Court of Appeals, arguing that the $300,000 paid is the extent of its liability limits based on the language of the insurance policy. We affirm the Court of Appeals.

Prejudgment interest is governed by N.C.G.S. § 24-5, which provides in pertinent part:

> In an action other than contract, the portion of money judgment designated by the fact finder as compensatory damages bears interest from the date the action is instituted until the judgment is satisfied. Interest on an award in an action other than contract shall be at the legal rate.

N.C.G.S. § 24-5(b) (1991).

> It has been established by this Court that when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the

statute, the provisions of the statute prevail to interpret the applicable . . . policy with regard to prejudgment interest.

*Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 6, 430 S.E.2d 895, 898 (1993); *see Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 400 S.E.2d 44 (1991). However, we have previously held that "the prejudgment interest statute, N.C.G.S. § 24-5, is *not* a part of the Financial Responsibility Act so as to be written into every liability policy." *Baxley*, 334 N.C. at 6, 430 S.E.2d at 898 (citing *Sproles v. Greene*, 329 N.C. 603, 613, 407 S.E.2d 497, 503 (1991)) (emphasis added). Thus, "in the absence of a statutory provision, a liability insurer's obligation to pay interest in addition to its policy limits is governed by the language of the policy." *Id.* (citing *Sproles*, 329 N.C. at 612-13, 407 S.E.2d at 502-03). Accordingly, the language of a liability carrier's policy controls the liability carrier's obligation to pay prejudgment interest in addition to its stated limits.

The Nationwide liability insurance policy, as amended by Endorsement 2096, which embodies all of the changes which are relevant to this appeal, reads in pertinent part as follows:

## II. LIABILITY COVERAGE

Part B is amended as follows:

A.  The first paragraph of the Insuring Agreement is replaced by the following:

We will pay damages for **bodily injury** or **property damages** for which any **insured** becomes legally responsible because of an auto accident. *Damages include prejudgment interest awarded against the **insured**.* We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will *pay all defense costs we incur.* Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B.  Section 3 of the Supplementary Payments provision is replaced by the following:

*In addition to our limit of liability, we will pay on behalf of an **insured**:*

NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

   *3.  all costs taxed against the **insured** and interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.*

C. The first sentence of the Limit of Liability provision is replaced by the following:

   The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury**, including damages for care, loss of services or death sustained by any one person in any one auto accident.

(Emphasis added).

In *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), this Court construed an insurance policy in which the insurer expressly agreed to pay, in addition to its contractual limit of liability, "all costs taxed against the insured." *Id.* at 463, 329 S.E.2d at 651. The insurance policy at issue did not have a provision specifically dealing with prejudgment interest as a part of damages. We held that "prejudgment interest provided for by N.C.G.S. 24-5 is a 'cost' within the meaning of the contract which, *under the contract in the present case*, the insurer is obligated to pay." *Id.* at 464, 329 S.E.2d at 651 (emphasis added). The "under the contract in the present case" language evinces this Court's intent to decide prejudgment interest issues based upon its interpretation of the specific policy under review.

In the more recent case of *Sproles*, 329 N.C. 603, 407 S.E.2d 497, the same issue was decided differently based upon the specific facts in that case. In *Sproles*, this Court determined that an insurer was *not* required to pay prejudgment interest beyond its limits of liability where the terms of the contract provided that the insurer would pay "all defense costs" in excess of the limit of liability. We determined that "all defense costs" was not as broad a phrase as "all costs" because the phrase "defense costs" includes only those expenses associated with litigation. Thus, *Lowe* and *Sproles* clearly establish that this Court will look to the specific terms of a policy in deciding whether a liability carrier is required to pay prejudgment interest in addition to its limit of liability. As Nationwide has done in the instant case, nothing in *Lowe* or *Sproles* prevents a liability insurer from

defining "damages" to include prejudgment interest and then capping the amount of damages that can be paid.

Further, this Court has stated that if a policy is not ambiguous, then the court must enforce the policy as written and may not remake the policy under the guise of interpreting an ambiguous provision. *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). The claimants argue that Nationwide's contractual agreement to pay "in addition to its limit of liability, . . . all costs taxed against the insured" obligated it to pay prejudgment interest on the stipulated judgment entered in the underlying tort actions based upon the decision in *Sproles*. They further argue that Nationwide's policy is ambiguous with respect to prejudgment interest and, therefore, should be construed in their favor. We disagree. That portion of the policy agreeing to pay "all costs taxed against the insured" is combined with "any interest accruing after judgment." This provision must be read in conjunction with the language specifically including prejudgment interest as an element of damages. In the policy in question, prejudgment interest, postjudgment interest, costs taxed, and defense costs are all clearly addressed. Thus, the reasoning in *Sproles* does not apply.

If a policy defines a term, then that meaning is to be applied "regardless of whether a broader or narrower meaning is customarily given to the term, the parties being free, apart from statutory limitations, to make their contract for themselves and to give words therein the meaning they see fit." *York Indus. Cent., Inc. v. Michigan Mut. Liab. Co.*, 271 N.C. 158, 162, 155 S.E.2d 501, 505 (1967). Moreover, all parts of an insurance policy are to be construed harmoniously so as to give effect to each of the policy's provisions. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978).

The Nationwide policy in the present case contains a provision in part B, subsection A of the liability coverage clause which defines prejudgment interest as part of damages—"Damages include prejudgment interest awarded against the insured." We conclude that the definition clause expressly including prejudgment interest as an element of damages controls the determination of whether prejudgment interest is payable beyond the policy limits. Even if the clause defining prejudgment interest as a part of damages had not existed, as was the case in *Baxley*, we would still hold that, based on the reasoning in *Baxley*, prejudgment interest is an element of damages. *See Baxley*, 334 N.C. at 8, 430 S.E.2d at 900. Therefore, in the instant case, the

NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

Court of Appeals correctly limited Nationwide's responsibility to pay prejudgment interest up to its $300,000 UIM limit of liability. However, because the parties have entered consent judgments for actual damages exceeding a total of $300,000, Nationwide can only be liable for prejudgment interest if it was contractually obligated to pay it above and beyond its limits of liability. Having concluded to the contrary, we affirm the Court of Appeals.

## II.

### Owned Vehicle Exclusion

[2]   The second issue raised in this appeal is the extent of Farm Bureau's UIM coverage. The specific issue we address is whether Farm Bureau's policy, which, under the UIM clause, excludes all other owned vehicles not listed in the policy, is in violation of N.C.G.S. § 20-279.21(b)(4) of the Financial Responsibility Act. This is a question that we specifically left undecided in *Smith*, 328 N.C. at 142, 400 S.E.2d at 47, as well as in *Bass v. N.C. Farm Bureau Mut. Ins. Co.*, 332 N.C. 109, 418 S.E.2d 221 (1992), because the policies in those cases did not contain an owned vehicle exclusion in the UM/UIM section of the policy. In *Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 462 S.E.2d 650 (1995), we held that such an exclusion for UM coverage is against the public policy of the Financial Responsibility Act and is, therefore, unenforceable. We are now faced with addressing this issue as it relates to UIM coverage. Concluding as this Court did in *Smith*, 328 N.C. at 149, 400 S.E.2d at 50, that "the definition of 'persons insured' for UM/UIM coverage strongly suggests that the UM/UIM coverage follows the person rather than the vehicle," and following the reasoning in *Bray*, we affirm the holding of the Court of Appeals.

The North Carolina Motor Vehicle Safety and Financial Responsibility Act was promulgated for the purpose of providing compensation for

> innocent victims of financially irresponsible motorists. The victim's rights against the insurer are not derived through the insured, as in the case of voluntary insurance. Such rights are statutory and become absolute upon the occurrence of injury or damage inflicted by the named insured, by one driving with his permission, or by one driving while in lawful possession of the named insured's car, regardless of whether or not the nature or

circumstances of the injury are covered by the contractual terms of the policy. The provisions of the Financial Responsibility Act are "written" into every automobile policy as a matter of law, and, when the terms of the policy conflict with the statute, the provisions of the statute will prevail.

*Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 441, 238 S.E.2d 597, 604 (1977).

"When examining cases to determine whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy." *Smith*, 328 N.C. at 142, 400 S.E.2d at 47.

In the present case, the type of coverage at issue is UIM coverage. The business automobile policy in question, which Farm Bureau issued to Mr. Scott, covering the Mack flatbed truck and the low-boy trailer, included UIM coverage. Section 20-279.21(b)(4), supplemented by other provisions of section 20-279.21 of the Financial Responsibility Act, governs UIM coverage. *Id.* "UIM insurance in North Carolina is an outgrowth from and development of uninsured motorist insurance." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989) (citing J. Snyder, Jr., *N.C. Automobile Insurance Law* § 30-1 (1988)). "UIM coverage allows the insured to recover when the tortfeasor has insurance, but his coverage is in an amount insufficient to compensate fully the injured party." *Id.*

As we stated in *Sutton*:

"The cardinal principle of statutory construction is that the intent of the legislature is controlling." *State v. Fulcher*, 294 N.C. 503, 520, 243 S.E.2d 338, 350 (1978). Legislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other. "The Court will not adopt an interpretation which resulted in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act. Obviously, the Court will, whenever possible, interpret a statute so as to avoid absurd consequences." *Insurance Co. v. Chantos*, 293 N.C. at 449, 238 S.E.2d at 603 (citations omitted).

*Sutton*, 325 N.C. at 265, 382 S.E.2d at 763 (citations omitted).

An "owned vehicle" or "household-owned" or "family-owned" vehicle exclusion (collectively, "owned vehicle exclusion") in the UIM section of an insurance policy is one which purports to deny UIM coverage to a family member injured while in a family-owned vehicle not listed in the policy at issue. Farm Bureau's argument for an owned vehicle exclusion stems from the "Schedule of Coverages and Covered Autos" provision of the policy. As the Court of Appeals correctly summarized, under this clause, numerical symbols are used to describe the type of vehicles that may be covered under the policy. The symbol beside the UIM coverage in Mr. Scott's policy is "07," relating to specifically described autos. Symbol 07 applies only to those autos listed on the declarations page of Scott's policy and lists only a 1964 Mack truck and a 1978 low-boy trailer; the vehicle Carolyn Mabe Scott was driving at the time of her death was not listed. This policy provided UIM coverage of $100,000 per accident. Thus, it is clear that the business automobile policy in this case, by its language, does not extend coverage to Carolyn or Lucinda Scott because Carolyn Scott was driving a car owned by Mr. Scott, which was not a covered automobile under the Farm Bureau policy. The question then becomes whether such an exclusion in the business vehicle policy violates the Financial Responsibility Act.

We begin our analysis by determining whether the Scotts are "persons insured" or persons who are covered by the Financial Responsibility Act's UIM provisions. At the time of the accident, N.C.G.S. § 20-279.21(b)(3) provided in relevant part:

> For purposes of this section "persons insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of such motor vehicle.

N.C.G.S. § 20-279.21(b)(3) (1989).

Under this statute, there are two classes of "persons insured":

> "(1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of

the named insured, the insured vehicle, and a guest in such
vehicle."

*Smith*, 328 N.C. at 143, 400 S.E.2d at 47 (quoting *Crowder v. N.C.
Farm Bureau Mut. Ins. Co.*, 79 N.C. App. 551, 554, 340 S.E.2d 127,
129, *disc. rev. denied*, 316 N.C. 731, 345 S.E.2d 387 (1986)). Members
of the first class are "persons insured" for the purposes of UIM cov-
erage where the insured vehicle is not involved in the insured's
injuries. *Id.* Members of the second class are "persons insured" for
the purposes of UIM coverage only when the insured vehicle is
involved in the insured's injuries. *Id.* We are concerned in this case
with the first class of "persons insured" under N.C.G.S.
§ 20-279.21(b)(4) for purposes of UIM.

It is undisputed that Mr. Scott is the named insured under the pol-
icy at issue. His wife, Carolyn Mabe Scott, and daughter, Lucinda Sue
Scott, are clearly members of the first class under the UIM clause of
the policy "without regard to whether the insured vehicle was
involved in the insured's injuries." *Id.*

Having decided that the Scotts are "persons insured" of the first
class, we must now determine whether the owned vehicle exclusion
as provided in the business vehicle policy at issue is inconsistent with
the legislative intent of the Act. We agree with the Court of Appeals
and conclude that it is. As the Court of Appeals aptly stated, "to hold
otherwise would defeat the intention of individuals who purchase
UIM coverage to protect all of their family members and would abro-
gate the distinctions between liability coverage[, which is vehicle-
oriented,] and UM/UIM coverage[, which is person-oriented]."
*Nationwide Mut. Ins. Co. v. Mabe*, 115 N.C. App. 193, 206, 444 S.E.2d
664, 672 (1994).

The Act is a "remedial statute to be liberally construed so that the
beneficial purpose intended by its enactment may be accomplished."
*Sutton*, 325 N.C. at 265, 382 S.E.2d at 763. We have already stated that
the purpose of the Act is "to allow an insured injured party to recover
damages when the tortfeasor has insurance, but his coverage is in an
amount insufficient to compensate fully the party." J. Snyder, Jr., *N.C.
Automobile Insurance Law* § 30-1. Our interpretation, as required, is
in accord with what our legislature intended. Further, contrary to
Farm Bureau's argument, we have made it clear that in applying the
Financial Responsibility Act to insurance policies, liability insurance
is "vehicle-oriented" and UIM coverage is "person-oriented." *Harris
v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 420 S.E.2d 124 (1992);

*Bass*, 332 N.C. 109, 418 S.E.2d 221; *Smith*, 328 N.C. 139, 400 S.E.2d 44. In *Harris*, we stated

> [w]hen one member of a household purchases first-party UIM coverage, it may fairly be said that he or she intends to protect all members of the family unit within the household. The legislature recognized this family unit for purposes of UIM coverage when it defined "persons insured" of the first class as "the named insured and, while resident of the same household, the spouse of any named insured and relatives of either . . . ." These persons insured of the first class are protected, based on their relationship, whether they are injured while riding in one of the covered vehicles or otherwise.

*Harris*, 332 N.C. at 193, 420 S.E.2d at 130 (citations omitted) (alteration in original).

Accordingly, we hold that the owned vehicle exclusion provision in the UIM clause at issue is in violation of the North Carolina Motor Vehicle Safety and Financial Responsibility Act and is, therefore, invalid.

## III.

## Private Passenger Motor Vehicle

[3] Based on our holding that the owned vehicle exclusion is unenforceable, we must now determine whether the Scotts are entitled to the inter- or intrapolicy stacking of their UIM coverage. This analysis turns on whether the vehicles listed in the policy are "private passenger motor vehicles." Unlike our analysis of the validity of the owned vehicle exclusion, "[o]ur disposition of whether stacking is allowed in the case *sub judice*, however, does not rest upon the classification of the insureds, but rather upon the type of vehicle the insureds were occupying at the time of the accident." *Aetna Cas. & Sur. Co. v. Fields*, 105 N.C. App. 563, 566, 414 S.E.2d 69, 71, *disc. rev. denied*, 331 N.C. 383, 417 S.E.2d 788 (1992).

N.C.G.S. § 20-279.21(b)(4) instructs this Court as to whether intrapolicy stacking for UIM coverage is applicable to any claim. At the time of the accident, N.C.G.S. § 20-279.21(b)(4), provided in pertinent part:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant pursuant to the exhausted liability

policy and the total limits of the owner's underinsured motorist coverages provided in the owner's policies of insurance; it being the intent of this paragraph to provide to the owner, in instances where more than one policy may apply, the benefit of all limits of liability of underinsured motorist coverage under all such policies; *Provided that this paragraph shall apply only to nonfleet private passenger motor vehicle insurance as defined in G.S. 58-40-15(9) and (10).*

N.C.G.S. § 20-279.21(b)(4) (1989) (emphasis added). We have previously held that the "language quoted above in subdivision (b)(4) explicitly mandates intrapolicy and interpolicy stacking of UIM coverages for the benefit of an injured policy owner." *Lanning v. Allstate Ins. Co.*, 332 N.C. 309, 314, 420 S.E.2d 180, 183 (1992) (citing *Sutton*, 325 N.C. 259, 382 S.E.2d 759). "The language of this statute makes it clear that intra-policy stacking is only available when the coverage is nonfleet and the vehicle covered is of the private passenger type." *Aetna Cas. & Sur. Co.*, 105 N. C. App. at 567, 414 S.E.2d at 71.*

Farm Bureau does not contend that the business automobile policy in the case at bar is a fleet policy. Therefore, the issue to be decided is whether the 1964 Mack flat bed truck and the 1978 low-boy trailer are private passenger motor vehicles as defined by statute, so as to allow stacking.

The applicable definition of a "private passenger motor vehicle" is controlled by N.C.G.S. § 58-40-10 (1989), the statute in effect on 16 February 1990, the date of the accident. This statute was amended in 1989 and became effective 1 February 1990, but was applicable only to policies written on or after that date. The Farm Bureau policy at issue in this case was written on 14 January 1990. N.C.G.S. § 58-40-10, as it read prior to being amended, provided in pertinent part:

(1) "Private passenger motor vehicle" means:

    a.  A motor vehicle of the private passenger or station wagon type that is owned or hired under a long-term contract by the policy named insured and that is neither used as a public or livery conveyance for passengers nor rented to others without a driver;

    b.  A motor vehicle with a pick-up body, a delivery sedan or a panel truck that is owned by an individual or by hus-

---

*Language in the original opinion was changed pursuant to an order reported at 342 N.C. 899.

band and wife or individuals who are residents of the same household and that is not customarily used in the occupation, profession, or business of the insured other than farming or ranching. Such vehicles owned by a family farm copartnership or corporation shall be considered owned by an individual for purposes of this Article.

N.C.G.S. § 58-40-10(1) (1987) (amended 1989). N.C.G.S. § 20-4.01(23) defined a "motor vehicle" as follows:

(23) Motor Vehicle—Every vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle. This shall not include mopeds as defined in G.S. 20-4.01(27)d1.

N.C.G.S. § 20-4.01(23) (1989) (amended 1991). The transcript and record are devoid of any evidence that supports a finding that the low-boy trailer satisfies the first prong of the private passenger motor vehicle test.

In this case, subsection (a) of N.C.G.S. § 58-40-10(1) is not applicable. Thus, under subsection (b), in order to satisfy the definition of a "private passenger motor vehicle," the low-boy trailer must first have a "pick-up body" or be "a delivery sedan or a panel truck." Mr. Scott testified that the trailer is about seventeen feet long and is pulled by the Mack truck. He further testified that it is used exclusively in his tobacco farming business to haul his tractor. Therefore, based on the evidence before this Court, we agree with the Court of Appeals and hold that the low-boy trailer is not a private passenger motor vehicle; it does not have a pickup body and is not a delivery sedan or a panel truck.

The Court of Appeals did not address whether the Mack truck is a private passenger motor vehicle despite acknowledging that question as an issue that was raised by the parties. After concluding that the low-boy trailer is not a private passenger motor vehicle, the Court then held that the Scotts are not entitled to *intrapolicy* stacking and limited the extent of Farm Bureau's coverage to $100,000. While the need to decide the status of the Mack truck was negated with respect to whether the Scotts are entitled to *intrapolicy* stacking, the Court failed to consider the propriety of the *interpolicy* stacking between the Farm Bureau business automobile policy and the Nationwide UIM policy. Since the end result will not change, in our discretion, we have decided not to remand this case to the Court of Appeals for a deter-

mination of the status of the Mack truck; instead, we will proceed to address whether the Mack truck is a "private passenger motor vehicle." Applying the same definition set forth above, and for the same reasons, we hold that it is not.

In the instant case, Mr. Scott testified at trial with respect to the Mack truck as follows:

Q. For a second, if you would, would you describe the Mack flat bed truck. What did it physically look like?

A. Well, it's a truck with one front axle and one back axle. . . .

Q. State about what size it was.

A. Probably in the range of a one ton, what's considered a one ton truck. Somewhat, a bit larger than a pickup.

Q. How much larger?

A. About twice the size, I'd say. I mean, not physical size, it wouldn't be that big.

Q. We're talking, I'm asking for you to describe for me physically what did it look like. What did it look like compared to a pickup truck?

A. It would be a little bit taller and probably about the same length, maybe a little bit wider.

Q. Okay. And did it have any sides to the back of it?

A. Just little short sides.

Q. How many passengers did it carry?

A. Three people could ride in it okay.

After reviewing a copy of the title he received when he purchased the truck, Mr. Scott testified that the empty weight of the truck as reflected on the title is 10,000 pounds. Later, Mr. Scott testified that he had never owned any large tractor trailers or any eighteen wheelers. Further, in the affidavit of Lee Vaughn, an independent claims adjuster and experienced automobile accident investigator, Mr. Vaughn stated that

this vehicle is typically sold without any type of bed on the vehicle which can be placed on the vehicle after sale. The typical chasis [sic] road weight of the vehicle is 10,675 pounds. This includes

NATIONWIDE MUTUAL INS. CO. v. MABE

[342 N.C. 482 (1996)]

the standard chassis weight, plus additional weight of what may be added to the chassis, such as a RAD507 rear axle, air brake equipment, two 50-gallon step tanks, 100 gallons of fuel, heater and defrosters and air horn. This weight does not include a bed to be added to the vehicle. Reference to a title out of Virginia showing a weight of 10,000 pounds would therefore exclude these items and also exclude a bed on the vehicle for its weight.

Finally, the record on appeal includes a copy of a picture and information obtained from Mack, the manufacturer of the truck, which shows that the truck does not have a pickup body and is neither a delivery sedan nor a panel truck.

The Scotts based their contention that the truck is a private passenger motor vehicle on the fact that passengers can sit in the cab of the truck and on the fact that it is used exclusively in Mr. Scott's farming business, thereby falling within the farming exception of N.C.G.S. § 58-40-10(1)(b). However, these factors are considered only after it is determined that the vehicle at issue meets the threshold test of having a pickup body or being a delivery sedan or panel truck. *See* N.C.G.S. § 58-40-10(1)(b). Moreover, in determining what the legislature intended when defining "private passenger motor vehicle," common sense tells us that the legislature was referring to vehicles used every day by the citizens of this State. In addition, the legislature provided in subsection (b) an exception to the exclusion of vehicles used in an occupation, profession, or business by including specific types of trucks used in farming or ranching operations, recognizing the reality of farm life where a pickup truck, for example, serves as both a private passenger vehicle and a work vehicle on the farm. Accordingly, having concluded that neither the low-boy trailer nor the Mack truck are private passenger motor vehicles, the Scotts are not entitled to the interpolicy stacking of the UIM coverage under Mr. Scott's Farm Bureau business vehicle policy with Nationwide.

Summarizing, the Court of Appeals is affirmed with respect to the issue of prejudgment interest and owned vehicle exclusion. On the issue of the status of the low-boy trailer as it impacts intrapolicy stacking, we affirm the Court of Appeals. On the issue of the status of the Mack truck as it impacts interpolicy stacking, we hold that the Mack truck is not a private passenger motor vehicle; therefore, interpolicy stacking is also not allowable.

AFFIRMED.