**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1401**

DAVID TODD VINCENT; SUSAN T. VINCENT,

　　　　　Plaintiffs − Appellees,

　　　v.

AMCO INSURANCE COMPANY,

　　　　　Defendant – Appellant,

　　　and

WENDY SMITH VICK; NATIONWIDE MUTUAL INSURANCE COMPANY; ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE COMPANY; SAFECO INSURANCE COMPANY OF AMERICA,

　　　　　Defendants,

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

　　　　　Intervenor/Defendant.

------------------------------

NORTH CAROLINA ADVOCATES FOR JUSTICE,

　　　　　Amicus Supporting Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Loretta C. Biggs, District Judge.  (1:17-cv-00762-LCB-JEP)

Submitted:  March 26, 2020                      Decided:  August 4, 2020

Before MOTZ, DIAZ, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Motz and Judge Rushing joined.

David L. Brown, Martha P. Brown, GOLDBERG SEGALLA LLP, Greensboro, North Carolina, for Appellant.  John D. Loftin, Jason R. Jones, LOFTIN & LOFTIN, P.A., Hillsborough, North Carolina, for Appellees.  T. Shawn Howard, MAGINNIS LAW, PLLC, Raleigh, North Carolina; Jerome P. Trehy, Jr., JEROME P. TREHY, JR., P.A., Durham, North Carolina; Jon Ward, PINTO COATES KYRE & BOWERS, PLLC, Greensboro, North Carolina, for Amicus North Carolina Advocates for Justice.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

In this insurance-coverage dispute, AMCO Insurance Company challenges the district court's grant of judgment on the pleadings for David and Susan Vincent, a married couple. AMCO contends that the district court erred in holding that the Vincents are entitled to coverage for a motor vehicle accident under a policy (the "AMCO policy") that AMCO issued to a company owned by the Vincents.

We agree with the district court. The North Carolina Motor Vehicle Safety and Financial Responsibility Act of 1953 (the "Act") mandates that AMCO cover the Vincents' injuries, even though the policy's terms don't contemplate coverage. This is because the AMCO policy doesn't fall within the Act's exemption for policies "applicable solely to fleet vehicles," and because the Vincents are class one insureds under the Act, entitling them to UIM coverage while occupying *any* vehicle.

Thus, we affirm the district court's judgment.

I.

A.

On October 17, 2016, Mr. Vincent was riding his motorcycle, which he owned and garaged at his residence, on US-70 when he crashed into Wendy Vick's car. Vincent suffered life-threatening injuries. After exhausting other insurance, the Vincents' remaining damages were $950,000, for which they sought compensation under the AMCO policy.

3

The AMCO policy had been issued to a company that the Vincents owned: TSPC, LLC d/b/a Todd's Affordable Furniture ("TSPC"). The policy is eighty-nine pages long. On many different pages, it includes a field labeled "Named Insured" and lists TSPC in that field. *See, e.g.*, J.A. 47, 56, 58, 59, 117, 119. It also provides TSPC with $1 million in underinsured motorist ("UIM") coverage, which protects persons who are injured by underinsured drivers.

According to the policy, this UIM coverage extends to anyone occupying a "covered 'auto.'"[1] J.A. 89–90. When the policy was issued, five cars were listed as covered autos, each of which (per the policy) was owned by, and garaged at, TSPC. The Vincents later added two more vehicles to the policy, making a total of seven covered autos at the time of Mr. Vincent's accident. But the motorcycle Vincent crashed was never listed in the policy, nor was it ever garaged at TSPC.

The AMCO policy contains a two-page endorsement titled "Drive Other Car Coverage – Broadened Coverage for Named Individuals" (the "Endorsement"). J.A. 103. The Endorsement identifies both Vincents by name as "insureds" and indicates that they have $1 million in UIM coverage, for which TSPC pays a $14 premium. Below that, the Endorsement includes two sections that are relevant here. Section B extends liability

---

[1] "Auto," as it's used in the policy, encompasses any "land motor vehicle . . . designed for travel on public roads," J.A. 74, which includes cars and motorcycles, *see Vasseur v. St. Paul Mut. Ins. Co.*, 473 S.E.2d 15, 18 (N.C. Ct. App. 1996). Similarly, the Act is intended to cover persons occupying cars or motorcycles because it uses the term "motor vehicle." N.C. Gen. Stat. § 20-279.21(b)(3).

4

coverage to any vehicle that the Vincents borrow for personal use. And section C says the following:

> **C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**
>
> The following is added to **Who Is An Insured:**
>
> Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you[2] don't own *except*:
>
> Any "auto" owned by that individual or by any "family member[.]"

J.A. 104 (emphasis added). In other words, the policy provides UIM coverage to the Vincents while they are pedestrians or occupying *any* auto that they don't own, but *not* while they are occupying any auto they do own, like the motorcycle. This type of provision is referred to as an "owned-vehicle exclusion."

On appeal, the parties agree that the owned-vehicle exclusion, if enforceable, would bar the Vincents' UIM coverage claim.

B.

The Vincents filed suit in state court in August 2017, asserting claims for personal injury, loss of consortium, and declaratory judgment against AMCO. AMCO removed this case to federal court pursuant to 28 U.S.C. § 1332 and filed an answer and counterclaim

---

[2] The policy defines "you" as "the Named Insured shown in the Declarations"—i.e., TSPC. J.A. 65. This doesn't foreclose the possibility of there being other named insureds, like the Vincents, whose names don't appear in the Declarations (which are a section of the policy). If the Endorsement had referred only to "the Named Insured," that would more clearly indicate that the policy has only one named insured.

seeking a declaratory judgment that its policy doesn't cover the Vincents' claims. Both parties filed Rule 12(c) motions for judgment on the pleadings.

The district court entered judgment for the Vincents, finding that the Act requires AMCO's policy to cover their claims in spite of the owned-vehicle exclusion. In doing so, the court relied on North Carolina case law holding that, under the Act, an owned-vehicle exclusion is void when applied to "class one insureds," which consist of the "named insured," his or her spouse, and resident relatives of either, *Nationwide Mut. Ins. Co. v. Mabe*, 467 S.E.2d 34, 42–43 (N.C. 1996). In other words, class one insureds are entitled to UIM coverage no matter what vehicle they are occupying. And in the court's view, the Vincents were named insureds—and thus class one insureds—because the Endorsement identifies them by name as insureds entitled to UIM coverage.

The court also rejected AMCO's argument that its policy fell within an exemption from the Act's UIM-coverage mandate for policies "applicable solely to fleet vehicles," N.C. Gen. Stat. § 20-279.21(b)(4) (the "fleet exemption"). The court reasoned that, via the Endorsement, the AMCO policy covered the Vincents while they occupied vehicles that didn't belong to them and weren't listed in the policy, which couldn't be considered "fleet vehicles." As such, the policy didn't apply *solely* to fleet vehicles.

This appeal followed. The North Carolina Advocates for Justice (the "Advocates"), an organization of 2,500 attorneys who advocate for the rights of persons injured in motor vehicle collisions, filed an amicus brief in support of the Vincents.

6

## II.

On appeal, AMCO repeats the arguments it made in the district court: (1) the Act's requirements don't apply to its policy because the policy is "applicable solely to fleet vehicles," and (2) even if the Act applies, it doesn't require coverage for the Vincents because they're not class one insureds. If either argument is correct, we must reverse.

We review rulings on Rule 12(c) motions de novo. *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 104 (4th Cir. 2006). As this is a diversity action involving an insurance policy issued in North Carolina, we must apply that state's law. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1000 (4th Cir. 1998). In interpreting the Act, we must predict how the Supreme Court of North Carolina would rule, *Stahle v. CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016), and follow any "fully reasoned holding" by the North Carolina Court of Appeals unless we are "convinced that the state's highest court would not follow that holding," *Assicurazioni*, 160 F.3d at 1003 (cleaned up).

### A.

We begin with AMCO's first argument, which requires us to examine the Act and its fleet exemption.

### 1.

The North Carolina Motor Vehicle Safety and Financial Responsibility Act "is the principal North Carolina statute governing compulsory motor vehicle insurance laws." *W. Am. Ins. Co. v. Terra Designs, Inc.*, No. 5:11-CV-80, 2014 WL 1309110, at *8 (W.D.N.C. Mar. 31, 2014). It requires, among other things, that most types of motor vehicle insurance

7

policies provide their policyholders with UIM coverage. *See* N.C. Gen. Stat. § 20-279.21(b)(4).

The Act's "avowed purpose . . . is to compensate the innocent victims of financially irresponsible motorists." *Liberty Mut. Ins. Co. v. Pennington*, 573 S.E.2d 118, 120 (N.C. 2002) (cleaned up). "The provisions of this statute are deemed to be a part of every automobile insurance policy written in North Carolina and control over contrary provisions contained in such policies." *Wood v. Nunnery*, 730 S.E.2d 222, 225 (N.C. Ct. App. 2012). Additionally, the Act "is to be liberally construed" because its purpose "is best served when every provision . . . is interpreted to provide the innocent victim with the fullest possible protection." *Pennington*, 573 S.E.2d at 120 (cleaned up).

In 2008, the Act was amended to include, among other things, the following language: "[N]o policy of motor vehicle liability insurance . . . *applicable solely to fleet vehicles* shall be required to provide underinsured motorist coverage." N.C. Sess. Laws 2008-124, H.B. 738 (emphasis added). The following year, the state legislature added another sentence: "When determining whether a policy is applicable solely to fleet vehicles, *the insurer may rely upon the number of vehicles reported by the insured* at the time of the issuance of the policy for the policy term in question." N.C. Sess. Laws 2009-561, S.B. 749 (emphasis added). These two sentences now appear consecutively in the Act. *See* N.C. Gen. Stat. § 20-279.21(b)(4).

While North Carolina courts haven't interpreted the fleet exemption, they have discussed the meaning of the term "fleet vehicle" in other contexts. Another North Carolina statute defines a "[n]onfleet" vehicle as "one of four or fewer motor vehicles hired

8

under a long-term contract or owned by the insured named in the policy." N.C. Gen. Stat. § 58-40-10(2). The state's courts have cited that definition for the proposition that, to be a "fleet policy," a policy must cover at least five vehicles that are used in the named insured's business. *See Hlasnick v. Federated Mut. Ins. Co.*, 524 S.E.2d 386, 389 (N.C. Ct. App. 2000) (stating that a policy was "a fleet policy" because it covered more than four vehicles), *aff'd in part and review dismissed as improvidently granted in part*, 539 S.E.2d 274 (N.C. 2000); *McCaskill v. Pa. Nat. Mut. Cas. Ins. Co.*, 454 S.E.2d 842, 844 (N.C. Ct. App. 1995) (finding that a policy was "nonfleet" because, while it covered five vehicles, none were used for the insured's business); *cf. Sutton v. Aetna Cas. & Sur. Co.*, 382 S.E.2d 759, 763 (N.C. 1989) (indicating that fleet vehicles are one of a "number of motor vehicles *used in an insured's business*" (emphasis added)).

2.

AMCO now argues that *any* policy covering at least five vehicles is *categorically* a policy "applicable solely to fleet vehicles." We disagree, based on the word "solely."

The seven vehicles listed in the AMCO policy are fleet vehicles because they are each used in TSPC's business. But, via sections B and C of the Endorsement, the policy *also* applies to many other vehicles, including any vehicle that the Vincents borrow from a friend for personal use. Such a vehicle isn't a "fleet vehicle" because it's not used in any insured's business. *See McCaskill*, 454 S.E.2d at 844 (indicating that five vehicles covered by a policy were nonfleet because they "were not used for the insured's business"). Nor is such a vehicle "hired under a long-term contract or owned by [any] insured named in the policy." *See* N.C. Gen. Stat. § 58-40-10(2). Because the AMCO policy covers both fleet

9

and nonfleet vehicles, it isn't "applicable *solely* to fleet vehicles," and isn't exempt from the Act, as the district court correctly held. AMCO's contrary interpretation would read the word "solely" out of the fleet exemption.

None of the three cases that have interpreted the fleet exemption support AMCO's position. In two of them, the policy at issue covered only vehicles that were used in the named insured's business and the court relied on that fact to conclude that the policy was exempt from the Act. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Njuguna*, 15 F. Supp. 3d 637, 643 (E.D.N.C. 2014) ("These vehicles were used in General Parts' business."); *W. Am. Ins. Co.*, 2014 WL 1309110, at *9 ("The policy contains a schedule of covered vehicles, *each purportedly used in operation of Terra Designs' business*." (emphasis added)). Even were we to agree with the Eastern District of North Carolina that vehicles used for both business and personal purposes can be fleet vehicles, *see Njuguna*, 15 F. Supp. 3d at 644, the problem for AMCO remains that the Endorsement covers vehicles that *aren't* used in any insured's business. And the third case is inapposite because the plaintiff there argued that another provision of the Act (one not relevant here) conflicted with the fleet exemption, not that the relevant policy wasn't applicable solely to fleet vehicles. *See Travelers Prop. Cas. Co. of Am. v. Seretta Constr. Mid-Atl., LLC*, 333 F. Supp. 3d 540, 545 (W.D.N.C. 2018) (addressing the plaintiff's argument that "a mixture of commercial and noncommercial motor vehicles in a fleet policy requires underinsured motorist coverage" because of the Act's express application to any "policy that insures both commercial motor vehicles . . . and noncommercial motor vehicles").

AMCO also relies on the Act's statement that "[w]hen determining whether a policy is applicable solely to fleet vehicles, the insurer may rely upon the number of vehicles reported by the insured at the time of the issuance of the policy for the policy term in question." N.C. Gen. Stat. § 20-279.21(b)(4). This, AMCO insists, means that we should look *only* to whether a policy covers at least five vehicles in assessing whether it falls within the exemption.

But we find more plausible the Advocates' explanation for why the North Carolina legislature added this provision one year after enacting the fleet exemption. In their view, this language was only meant to clarify that changes to the number of vehicles covered by a policy after its issuance don't affect its status. In other words, if a policy falls within the fleet exemption when it's issued, but vehicles are later removed from the policy—taking the total number of insured vehicles below five—the policy remains within the exemption's scope. For support, the Advocates point to the provision's emphasis on "the time of the issuance of the policy," and to a December 2008 letter from the North Carolina Reinsurance Facility (an entity through which auto insurers pool risks) expressing concern that a policy's status could change if an insured "add[ed] or delete[d] vehicles on a policy mid-term." N.C. Reinsurance Facility, Circular Letter to All Member Companies (Dec. 12, 2008), http://www.ncrb.org/Portals/5/ncrf/circular%20letters/RF-08-23%20-%20Cedable%20Limits.pdf.

Of course, the Advocates have no direct evidence that the North Carolina legislature relied on this letter. Indeed, no party points to any relevant legislative history. But the Advocates' reading comports better with the fleet exemption's inclusion of the word

11

"solely." When interpreting a North Carolina statute, we must "give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 675 S.E.2d 641, 649 (N.C. 2009). Had the legislature wanted to exempt *any* policy covering more than four vehicles from the Act's requirements, the exemption would say "applicable to fleet vehicles," not "applicable *solely* to fleet vehicles." And to the extent that there is any ambiguity here, we must construe the Act liberally, in favor of coverage. *See Pennington*, 573 S.E.2d at 120.

In sum, the Act's UIM-coverage requirements apply to the AMCO policy.

B.

Next, we consider whether the Act mandates that the AMCO policy cover Mr. Vincent for the injuries he suffered while operating his motorcycle, despite the Endorsement's owned-vehicle exclusion. As we explain, this issue turns on whether the Vincents are "named insureds" under the policy.

The Act recognizes two classes of insureds. *Mabe*, 467 S.E.2d at 42. Class one insureds consist of "the named insured and, while resident of the same household, the spouse of the named insured and relatives of either," while class two insureds consist of "any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle." *Id.* (cleaned up); *see* N.C. Gen. Stat. § 20-279.21(b)(3) (where these definitions come from).

The Act requires auto insurance policies to cover class one members regardless of whether a vehicle listed in the policy was involved in their injuries. *Mabe*, 467 S.E.2d at 42. By contrast, the Act protects class two insureds only if they are occupying a vehicle

12

insured by the policy. *Nationwide Mut. Ins. Co. v. Williams*, 472 S.E.2d 220, 223 (N.C. Ct. App. 1996). In other words, UIM protection for class one insureds is "person-oriented," while coverage for class two insureds is "vehicle-oriented." *Mabe*, 467 S.E.2d at 42–43 (cleaned up). Therefore, owned-vehicle exclusions are unenforceable as to class one insureds, *Mabe*, 467 S.E.2d at 43, but valid as to class two insureds, *Brown v. Truck Ins. Exch.*, 404 S.E.2d 172, 175 (N.C. Ct. App. 1991).

TSPC is undisputedly a named insured because the AMCO policy identifies it as such. But the Vincents' ownership of TSPC doesn't make them named insureds, *see Busby v. Simmons*, 406 S.E.2d 628, 630 (N.C. Ct. App. 1991), and as a corporation, TSPC cannot have a spouse or relatives, *see Sproles v. Greene*, 407 S.E.2d 497, 500 (N.C. 1991). So, the only way that the Vincents can be class one insureds is if they are named insureds via the Endorsement.

That begs the question: how can we tell whether a party is a named insured? It's not as easy as one might expect. Neither the Act nor the AMCO policy define the term. The North Carolina Court of Appeals has suggested (in dictum, we believe) a narrow definition of that term that would exclude the Vincents because their names don't appear in the policy's declarations pages. *See Busby*, 406 S.E.2d at 630–31 ("'Named insured' has a common sense and explicit meaning. It is the named individual (or corporation) on the declarations page of the policy.").

But more recent cases have rejected this view, making clear that an insurance policy can have multiple named insureds and that persons (or entities) can be named insureds without the policy identifying them as such. *See Beddard v. McDaniel*, 645 S.E.2d 153,

13

155–56 (N.C. Ct. App. 2007) (finding that three individuals were named insureds even though the policy didn't identify them as such and did identify a corporation as a named insured); *Stockton v. N.C. Farm Bureau Mut. Ins. Co., Inc.*, 532 S.E.2d 566, 568–69 (N.C. Ct. App. 2000) (finding that a farm's two owners were named insureds under an auto insurance policy that identified the farm as the named insured, reasoning that the farm was not a legal entity and couldn't bring an action on the policy). That said, the appearance of the Vincents' names in the Endorsement doesn't necessarily make them named insureds; the context in which their names appear is also relevant. *See Williams*, 472 S.E.2d at 222 (finding that a plaintiff wasn't a named insured because his name was included in the policy only for underwriting purposes).

In finding that the Vincents were named insureds, the district court relied on *Beddard.* There, the North Carolina Court of Appeals considered a policy that (1) listed a corporation (owned by at least one of the three plaintiffs) in a field entitled "Name of Insured," and (2) separately identified each of the three plaintiffs as "designated individuals" for UIM coverage. *Id.* at 154. The Court of Appeals concluded that the plaintiffs were named insureds entitled to person-oriented coverage, reasoning that they "were named as 'designated individuals' on the Elective Options Form for UIM coverage; *as such*, and *as conceded by* [the insurer] in its brief, they qualify under Endorsement 092 of the policy as 'named insureds' for the UIM Coverage Part." *Id.* at 155 (emphasis added).

The district court found no meaningful difference between *Beddard* and this case. The court also held that it was bound to follow *Beddard*—even though the insurer in that

case conceded that the Beddards were named insureds—because the Court of Appeals used the words "as such" before referring to the insurer's concession.

AMCO now contends that *Beddard* is distinguishable and that (in any event) we shouldn't defer to it because the insurer's concession means that *Beddard*'s holding wasn't fully reasoned, *see Assicurazioni*, 160 F.3d at 1002. We need not address those points because, whether or not *Beddard* controls here, the district court's conclusion was correct: the Vincents are class one insureds. We reach this conclusion by working backwards from the Act's definition of class two insureds.

As stated above, class two insureds include persons who use vehicles "with the consent, express or implied, of the named insured." *Mabe*, 467 S.E.2d at 42 (cleaned up). But here, the Endorsement affords the Vincents UIM coverage so long as they occupy *any* vehicle that they don't own, even without the consent of TSPC (who, per AMCO, is the only named insured). That distinguishes this case from the ones AMCO cites, like *Brown*, where the plaintiff was in class two because he was only covered if he drove a car "in the business of the named insured," 404 S.E.2d at 175. So, the Vincents have broader UIM coverage than a class two insured.

What does this mean? The Act (and the cases interpreting it) don't definitively tell us whether persons with broader coverage than a class two insured must be class one insureds. Because there are no other classes of insureds under the Act, the Supreme Court of North Carolina has suggested that each person covered by the Act must fall into one of the two classes, *see Sproles*, 407 S.E.2d at 500 ("All other persons [who are not class one insureds] are class two insureds . . ."). And, as stated above, the policy is ambiguous as to

15

whether the Vincents are named insureds because it never defines that term or refers to class one or class two, and because it gives the Vincents broad coverage.

We must construe any ambiguity in the Act or the policy in the Vincents' favor. *See Pennington*, 573 S.E.2d at 120; *Stockton*, 532 S.E.2d at 567. Therefore, we conclude that the Vincents are class one insureds, and specifically named insureds.

We come to this result even as we acknowledge that AMCO allegedly didn't view the Vincents as named insureds when it drafted the policy. Regardless, AMCO had notice of the definition of class two insured. Yet it gave the Vincents broader UIM coverage than a class two insured enjoys. And now, it points to no case where a person with such coverage was deemed a class two insured. This ambiguity must "be strictly construed against the drafter," AMCO, "since [it] prepared the policy and chose the language." *Stockton*, 532 S.E.2d at 567 (cleaned up).

In sum, we predict that the Supreme Court of North Carolina would rule that, if a motor vehicle policy gives an entity broader UIM coverage than that of a class two insured, that entity is necessarily a class one insured. On that basis, we affirm the district court's holding that the Act requires the AMCO policy to cover the Vincents' injuries.

### III.

For the reasons given, the district court's judgment is

16

*AFFIRMED.*[3]

---

[3] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.