EATMAN LEASING, INC AND RUSSELL O. LEITCH, SR. PLAINTIFFS-APPELLEES V. EMPIRE FIRE & MARINE INSURANCE COMPANY, DEFENDANT-APPELLANT, AND DOUGLAS W. SHIPLEY, DEFENDANT-APPELLEE

No. COA00-571

(Filed 7 August 2001)

## 1. Insurance— automobile—excess liability coverage

The trial court did not err in an action arising out of an automobile accident by granting summary judgment in favor of defendant driver and finding that all four business auto insurance policies afforded coverage to plaintiffs, because: (1) defendant insurer did not dispute that plaintiffs are covered under the primary garage policy; (2) plaintiff driver's operation of the vehicle was covered under the excess garage policy when plaintiff was using with plaintiff company's permission a covered auto owned by the company; (3) plaintiff driver's operation of the vehicle was covered under the primary rental policy when the car driven by plaintiff was an owned auto covered under the policy, plaintiff company is the named insured under this policy, plaintiff driver was operating a covered auto with the permission of plaintiff company, and there is no exclusion preventing plaintiff driver from being covered; and (4) plaintiff driver's operation of the vehicle was covered under the excess rental policy when it incorporates the key definitions from the primary rental policy, and both plaintiffs are insureds under the primary rental policy.

EATMAN LEASING, INC. v. EMPIRE FIRE & MARINE INS. CO.

[145 N.C. App. 278 (2001)]

**2. Insurance— automobile—supplemental payments—pre-judgment interest over policy limits**

The trial court did not err in an action arising out of an automobile accident by declaring that all four business auto insurance policies provided supplemental payments for prejudgment interest over the policy limits, because: (1) prejudgment interest issues are decided based upon the court's interpretation of the specific insurance policy under review in each particular case; (2) the four policies in this case have a provision for payment of either all costs or all interest incurred in addition to liability limits, and therefore the "all costs" language of the policies includes prejudgment interest; and (3) the policies provide that supplementary payments are in addition to the policy limits.

Appeal by Defendant, Empire Fire & Marine Insurance Company from judgment entered on 17 February 2000 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals on 20 April 2001.

*Poyner & Spruill, LLP., by Randall R. Adams for Plaintiff-Appellee Eatman Leasing, Inc.*

*Marshall, Williams, & Gorham, LLP., by W. Robert Cherry, Jr. for Plaintiff-Appellee Leitch.*

*McGuire, Woods, Battle & Boothe, LLP., by Kurt E. Lindquist, II and Arden Lynn Achenberg for Defendant-Appellant.*

*Thompson, Smyth & Cioffi, LLP., by Theodore B. Smyth for Defendant-Appellee Shipley.*

BRYANT, Judge.

Empire Fire & Marine Insurance Company (Empire) issued four business auto policies (two primary and two excess) to Eatman Leasing which were in effect on 11 January 1997. On that date, Plaintiff Russell O. Leitch, Sr. and Defendant Douglas W. Shipley, were involved in an automobile accident. The vehicle driven by Leitch was owned by Eatman Leasing. Eatman Leasing was in the business of leasing, renting and selling automobiles. Leitch was traveling to Wilmington in order to transport the vehicle to Eatman Leasing's Wilmington operation.

Plaintiffs Eatman Leasing and Leitch filed a complaint for a declaratory judgment against Defendants Empire and Shipley on 23

April 1999. Plaintiffs sought a declaration that Empire had a duty to fully indemnify them under the four insurance policies. Both defendants filed motions for summary judgment. The trial court granted defendant Shipley's motion for summary judgment on 17 February 2000. Empire filed a notice of appeal on 10 March 2000.

There are two basic issues on appeal: whether the trial court erred in granting summary judgment in favor of Shipley in I) finding that the four insurance policies afforded coverage to Eatman and Leitch and II) finding the policies provided for prejudgment interest over the policy limits. For the reasons which follow, we find no error in the trial court's rulings.

I.

The trial court held that: 1) all four policies were in effect on the date of the accident; 2) the vehicle driven by Leitch and owned by Eatman is a covered auto under policy numbers SG231000 and SL231000; 3) Eatman is an insured under the policies because it is the named insured; 4) Leitch is an insured because he operated the vehicle with the permission of Eatman as set forth in the "Who is an Insured" section of the primary policies; 5) the vehicle driven by Leitch and owned by Eatman was a covered auto under Policy Number SF231000, pursuant to the amendatory language of Endorsement EM0808GR; 6) both Eatman and Leitch are insureds under Policy Number SX231000 because that policy incorporates by reference the "insureds" and "covered autos" definitions in the primary policy, SF231000.

[1] Empire first argues that the trial court erred in granting Shipley's summary judgment motion and finding that all four insurance policies afforded coverage to Eatman Leasing and Leitch. Empire argues that the trial court's decision was in direct contravention of the express language of the policies. We disagree.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2000). Once the moving party makes the required showing, the burden shifts to the non-moving party to produce a forecast of evidence demonstrating specific facts showing that he can at least establish a prima facie case at trial. *Gaunt v. Pittaway*, 135 N.C. App. 442, 447, 520 S.E.2d 603, 607 (1999),

*cert. denied,* 353 N.C. 371, 547 S.E.2d 810 (2001) *citing Moore v. Coachmen Industries, Inc.,* 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998).

An insurance policy is a contract and like all other contracts, "the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mutual Ins. Co.,* 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). The intent of the parties may be derived from the language in the policy. *Kruger v. State Farm Mut. Auto. Ins. Co.,* 102 N.C. App. 788, 789, 403 S.E.2d 571, 572 (1991). When the policy language is unambiguous, our courts have a "duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." *Fidelity Bankers Life Ins. Co. v. Dortch,* 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986) (citation omitted). "[W]here the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation," judicial construction is necessary. *Allstate Ins. Co. v. Runyon Chatterton,* 135 N.C. App. 92, 94, 518 S.E.2d 814, 816 (1999), *disc. review denied,* 351 N.C. 350, 542 S.E.2d 205 (2000) (citation omitted). If there is uncertainty or ambiguity in the language of an insurance policy regarding whether certain provisions impose liability, the language should be resolved in the insured's favor. *Williams v. Nationwide Mut. Ins. Co.,* 269 N.C. 235, 240, 152 S.E.2d 102, 107 (1967). Moreover, exclusions from liability are not favored, and are to be strictly construed against the insurer. *Southeast Airmotive Corp. v. U.S. Fire Insur. Co.,* 78 N.C. App. 418, 420, 337 S.E.2d 167, 169 (1985).

When an insurance policy provides a definition of a term, that definition should be used. However, when no definition is provided in the policy, the nontechnical words have the same meaning as they would in ordinary speech. *Woods* at 506, 246 S.E.2d at 777. In determining the meaning of a term, the court may consider other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony. "Each word is deemed to have been put into the policy for a purpose and will be given effect, if that can be done by any reasonable construction . . . ." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.,* 276 N.C. 348, 355, 172 S.E.2d 518, 522 (1970) (citation omitted).

In this case, the four policies issued were: SG231000, entitled "Garage Auto Policy Form" [Primary Garage Policy] with endorsements; SL231000, entitled "Automobile Liability Excess Indemnity Policy Form" [Excess Garage Policy] with endorsements; SF231000

entitled, "Rental Auto Policy Form" [Primary Rental Policy] with endorsements; and SX231000, entitled "Excess Rental Policy" [Excess Rental Policy] with endorsements. Empire does not dispute that Eatman Leasing and Leitch are covered under the Primary Garage Policy, SG231000. However, Empire does challenge the coverage of Eatman and Leitch under the: A) Excess Garage Policy, SL231000; B) Primary Rental Policy, SF231000; and C) Excess Rental Policy, SX231000.

### A. Excess Garage Policy [SL231000]

Empire contends that the Excess Garage Policy did not afford coverage for the January 1997 accident because the express provisions of the policy do not cover Leitch. To determine what coverage Leitch is afforded under the Excess Garage Policy, we need to examine this excess policy and the Primary Garage Policy, SG231000, which is specifically referenced in the declarations of the Excess Garage Policy as the "underlying insurance". The relevant portions of the Excess Garage Policy, SL231000 provide:

INSURING AGREEMENT

Excess Indemnity Over Automobile Liability Insurance

"We" will indemnify "you" for "loss" which occurs during the "policy period" in *excess* (emphasis added) of the "primary insurance."

CONDITIONS

Application of Primary Insurance

Unless a provision to the contrary appears in "our" policy, all the conditions, definitions, agreements, exclusions and limitations of the "primary insurance", including changes by endorsement will apply to "our" policy.

The following "Who is an Insured" provision from the Primary Garage Policy, SG231000 also applies to the excess policy:

1. WHO IS AN INSURED

a. The following are "insureds" for covered "autos":

(1) You for any covered "auto".

(2) Anyone else while using with *your permission* (emphasis added) a covered "auto" you own, hire or borrow except:

. . .

(c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" *unless that business is your "garage operations"*. (emphasis added).

The excess policy defines "you" and "your" to mean or refer to the Insured named in the "declarations". However, EM0951, the Specific Named Insured Endorsement amends the definition of "you" and "your" by providing in part:

Definition 1. under DEFINITIONS is deleted in its entirety and replaced with the following:

1. . . . The words "you" or "your" mean or refer to:

a. the Insured named in the "declarations"

. . .

e. only such other individuals who are *specifically listed on this endorsement* (emphasis added)

Empire contends that the endorsement modifies the definition of "insured" in both the primary and excess policies to include only those non-employees who are named in the declarations. Empire takes the position that the only way Leitch would be covered under the Excess Garage Policy is if Leitch was an employee of Eatman Leasing (as Eatman Leasing is the named insured) if Leitch, as an independent contractor or non-employee of Eatman Leasing, is named on the endorsement.

We disagree and find that the "Who is an Insured" language in the primary insurance policy was not altered by the endorsement. This is because the endorsement modified the definition of "you" and "your" but it did not change the definition of "insureds." Thus the "Who is an Insured" language remains applicable to the excess policy. Eatman is the named insured. Leitch was operating the vehicle with Eatman's permission at the time of the collision. Leitch's operation of the vehicle under these circumstances is covered under the excess policy SL231000 because he was "using with [Eatman's] permission a covered auto [Eatman] own[ed]."

EATMAN LEASING, INC. v. EMPIRE FIRE & MARINE INS. CO.

[145 N.C. App. 278 (2001)]

### B.  Primary Rental Policy [SF231000]

Empire next argues that the trial court erred in declaring coverage under policies SF231000 and SX231000 because the two policies were for the benefit of rental vehicles only and that the accident in question arose out of the use of a non-rental vehicle by a non-insured individual. We disagree.

Primary Rental Policy SF231000 contains the following pertinent language:

I. A: COVERED AUTOS

Covered "autos" are those "autos" described in ITEM TWO of the Declarations for which a premium charge is shown in ITEM TWO and that:

1. You use;

. . .

II. A: COVERAGE—we will pay all sums an "insured" legally must pay as damages . . . caused by an "accident" and resulting from the ownership, maintenance or *use* of a covered "auto" (emphasis added).

1. Who is an Insured: you for any covered auto; your employee, but only while acting within the scope of his or her duties; and *anyone else using w/ your permission a covered "auto" you own*, except as set forth in section II. A. 2 (emphasis added)

2. d. Who is not an Insured: someone using a covered auto while he or she is working in a business selling, moving, transporting, servicing, repairing or parking autos *unless that business is yours. (emphasis added)*.

Thus, to obtain coverage the auto must be a "covered auto" as defined in section I. A. and the person must be an "insured" as defined in section II. A.

Under the initial policy, the "covered autos" provision in section I, paragraph A, says "covered autos" are "specifically described autos *available for short-term rental to others*". (emphasis added). However, paragraph A is rewritten in Endorsement EM0808GR, which amends the policy definition of "covered autos". It states:

This endorsement modifies insurance provided under the following:

Rental Auto Coverage Form

Section I—Covered Autos, Paragraph A, WHICH AUTOS ARE COVERED is changed to read as follows:

A.  WHICH AUTOS ARE COVERED AUTOS

OWNED "AUTOS"—Those "autos" you own are covered "autos." This includes those "autos" you acquire ownership of after the policy begins.

. . .

The effect of the endorsement was to replace the Standard Code Symbol System which used symbols "1-10" to code the "covered autos". After the endorsement, only three types of "covered autos" were defined in the policy: OWNED AUTOS, HIRED AUTOS, and NON-OWNED AUTOS. While the initial policy extended coverage for rental vehicles, the endorsement extended the definition of covered autos to include "those autos [Eatman] own[ed]." Thus, the endorsement provisions are in conflict with the coverage provisions in the initial policy. "When such a conflict is present, the provisions most favorable to the insured, *i.e.* those in the endorsement, are controlling." *Drye v. Nationwide Mutual Ins. Co.*, 126 N.C. App. 811, 815, 487 S.E.2d 148, 150 (1997) (citation omitted).

With respect to the Primary Rental Policy, the vehicle owned by Eatman and driven by Leitch, was an OWNED AUTO, and thus a covered auto, as that term was defined in Endorsement EM0808GR. Eatman Leasing, Inc. is the named "insured" under this policy. Leitch is an insured because he was operating a "covered auto" with "permission" of Eatman Leasing, Inc., and thus meets the definition of WHO IS AN INSURED under section II. A. 1. c. Finally, there is no exclusion under section II. A. 2. which would prevent Leitch from being covered. His use of the vehicle, driving from Rocky Mount to Wilmington, was for the benefit of *Eatman's* business (emphasis added).

## C.  Excess Rental Policy [SX231000]

The final policy at issue in this case, Excess Rental Policy, SX231000, states in pertinent part:

Section I A.  "we will pay all sums an 'insured' legally must pay as damages in excess of the 'primary insurance' caused by an 'accident' and resulting from the ownership, maintenance of [sic] use

of a covered 'auto'. We will not provide coverage if the 'loss' is not covered under the primary insurance.

. . .

Section III—"unless a provision to the contrary appears in our policy, all the conditions, definitions, agreements, exclusions and limitations of the "primary insurance" including changes by endorsement, will apply to our Coverage form." [Primary policy SF 231000]

. . .

Declarations page: "description of automobile(s)—covered autos as defined by the underlying primary insurer."

This Excess Rental Policy directly and specifically references Primary Rental Policy, SF231000. (See previous discussion of SF231000 in section B of this opinion.) The Excess Rental Policy insures the same "covered autos" as the Primary Rental Policy. The term "insured" is defined in part in the Excess Rental Policy as "any person or organization qualifying as an "insured" in the "Who is an Insured" provision of the primary insurance." Inasmuch as both Eatman and Leitch are insureds under the Primary Rental Policy and the Excess Rental Policy incorporates the key definitions from the Primary Rental Policy, we find that Eatman and Leitch are covered under the Excess Rental Policy.

Accordingly, we conclude that the trial court did not err in granting the summary judgment motion and finding that all four policies afforded coverage to Eatman Leasing and Leitch.

II.

[2] Empire's final argument is that the trial court erred in declaring that the four policies provided supplemental payments for prejudgment interest over the policy limits. Again, we disagree.

When a statute is applicable to the terms of an insurance policy, "the provisions of that statute become terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute prevail." *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 6, 430 S.E.2d 895, 898 (1993) (citation omitted). The prejudgment interest statute, N.C.G.S. § 24-5, states in pertinent part:

(b) Other Action—In an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied.

N.C.G.S. § 24-5(b) (2000).

However, our Supreme Court has previously held that N.C.G.S. § 24-5 is not a part of the Financial Responsibility Act so as to be written into every liability policy. *Sproles v. Greene*, 329 N.C. 603, 613, 407 S.E.2d 497, 503 (1991). Thus, when the statute is not applicable to the terms of an insurance policy, "a liability insurer's obligation to pay interest in addition to its policy limits is governed by the language of the policy." *Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 490, 467 S.E.2d 34, 39 (1996) *quoting Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 6, 430 S.E.2d 895, 898 (1993).

Our courts have addressed the issue of prejudgment interest in several cases. In each case the court determined whether an insurer was required to pay interest beyond the policy limits based on the language in the policy. Based upon our review of those cases, we find the decision in *Lowe v. Tarble*, 313 N.C. 460, 329 S.E.2d 648 (1985), to be directly applicable to the case *sub judice*. In *Lowe* the insurer expressly agreed to pay, "*all costs* taxed against the insured," in addition to its contractual limit of liability. Id. at 463, 329 S.E.2d at 651. Our Supreme Court held that "prejudgment interest provided for by N.C.G.S. 24-5 is a cost within the meaning of the contract which, under the contract in the present case, the insurer is obligated to pay." Id. at 464, 329 S.E.2d at 651.

Empire contends that *Lowe* should not control in the instant case because other cases decided since *Lowe (Sproles v. Greene*, 329 N.C. 603, 407 S.E.2d 497 (1991); *Baxley v. Nationwide Mut. Ins. Co.*, 334 N.C. 1, 430 S.E.2d 895 (1993); and *Nationwide Mut. Ins. Co. v. Mabe*, 342 N.C. 482, 467 S.E.2d 34 (1996)) have held that prejudgment interest constitutes damages, not costs, and as such, it is to be paid by the insurer as a part of the judgment *up to* the insurers' limits of liability. We disagree and distinguish the cases cited by Empire and conclude that the holding in *Lowe does control* in this case.

In *Sproles v. Greene*, 329 N.C. 603, 611-12, 407 S.E.2d 497, 503 (1991), the Court held that "under the language of the policy . . . [the insurer] has agreed to pay, in excess of its liability limits, only the costs of defense and not all costs taxed against the insured, and

[thus] *Lowe* is not controlling." The *Sproles* court distinguished its case from *Lowe* because the phrase "all defense costs we incur" contained in the policy under review in *Sproles* was not as broad as the phrase "*all costs* taxed against the insured" contained in the policy under review by the *Lowe* court. *Id.* at 611, 407 S.E.2d 497 at 502. Therefore, based on the specific terms of the contract, prejudgment interest was applicable only to all *defense* costs, albeit in excess of the liability limits.

In *Baxley*, the Court interpreted the following contractual language to support its holding that the UIM carrier was obligated to pay prejudgment interest up to its policy limits:

> [UIM carrier promises to pay] *damages* which a covered person is *legally entitled to recover* from the owner or operator of an uninsured motor vehicle because of:
>
> 1.  Bodily injury sustained by a covered person and caused by an accident; and
>
> 2.  Property damage caused by an accident.

*Baxley* at 6-7, 430 S.E.2d at 899. (emphases added)

The contract in *Baxley* did not define damages, thus the Court construed this ambiguity against the drafter, the UIM carrier, and found the definition of damages to include the compensatory damage amount awarded by the jury as well as prejudgment interest. We distinguish *Baxley* because the Court therein analyzed liability language in the primary policy, but did not completely analyze the supplementary payment provisions of that policy which is at issue in the case *sub judice*. However, the *Baxley* Court noted that the "specific prejudgment interest provision [in the supplementary payment provisions] is not rendered "superfluous" by a finding that prejudgment interest is *also* an element of a plaintiff's damages." *Id.* at 10-11, 430 S.E.2d at 901. Further, the *Baxley* Court distinguished *Lowe v. Tarble* by indicating that "Lowe dealt with a supplementary payments provision in the liability section of a policy in which the insurer agreed to pay "*all* costs" taxed against the insured "*in addition to* the applicable limit" of the policy." *Id.* at 11, 430 S.E.2d at 901 (citation omitted). Such specific provisions obligate the carrier to pay prejudgment interest "*in addition to* its policy limits." *Id.* at 10, 430 S.E.2d at 901. Therefore, under our reading of *Baxley*, an award of prejudgment interest would not be precluded where the specific language of the contract provides for such interest in addition to the policy limits.

In *Mabe*, the policy at issue addressed prejudgment interest, post-judgment interest, costs taxed, and defense costs. *Mabe* at 492, 467 S.E.2d at 40. The *Mabe* policy had a provision which defined prejudgment interest as part of damages, leading the Court to conclude "that the definition clause expressly including prejudgment interest as an element of damages control[led] the determination of whether prejudgment interest is payable beyond the policy limits." *Id.*

The cases discussed—*Sproles*, *Baxley* and *Mabe*—clearly indicate that prejudgment interest issues will be decided by our courts based upon the court's interpretation of the specific insurance policy under review in each particular case. *Mabe* at 491, 467 S.E.2d at 39.

In the case *sub judice* the four policies issued to Eatman have a provision for payment of either "all costs" or "all . . . interest incurred" *in addition to liability limits*. The policies contain no specific language discussing prejudgment interest as damages. The primary policies, SG231000 and SF231000, have identical prejudgment interest language which provides:

4. COVERAGE EXTENSIONS

   a. Supplementary Payments:

In *addition to the Limit of Insurance*, we will pay for the "insured":

. . .

    (5) *All costs taxed against the "insured" in any "suit" we defend;* (emphasis added)

The excess policies, SL231000 and SX231000 provide:

If we exercise this right [to defend the case], we will assume our proportionate share of all court costs, legal fees, investigation costs and *interest incurred with our consent.* (emphasis added).

The "all costs" language in these policies is almost identical to the policy language in *Lowe*. Therefore, following the ruling in *Lowe* and applying it to the policies at issue here we conclude the "all costs" language of the policies includes prejudgment interest. Further, the policies clearly provide that supplementary payments are in addition to the policy limits. Accordingly, we affirm the trial court's ruling that the four policies provided supplemental payments for prejudgment interest over the policy limits.

[145 N.C. App. 290 (2001)]

AFFIRMED.

Chief Judge EAGLES and Judge McCULLOUGH concur.