BERRY O. MONTEAU AND BAY AREA TURF, INC., PLAINTIFFS v. REIS TRUCKING & CONSTRUCTION, INC., LARRY REIS, AEGIS SECURITY INSURANCE COMPANY, ELLIS-DON CONSTRUCTION, INC., FEDERAL INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, AND GWEN M. REIS, DEFENDANTS

No. COA00–1078

(Filed 6 November 2001)

**1. Construction Claims— payment bond—subcontractor's employee**

The trial court correctly granted summary judgment for defendants Ellis-Don, Federal, Travelers, and Aegis with respect to payment bond claims arising from construction at Raleigh Durham International Airport. None of the work which was the subject of the complaint was "performed in prosecution of the work" called for in the contract between Ellis-Don and Reis Trucking, so that plaintiff was not entitled to reimbursement under any payment bond issued by the parties in this case. N.C.G.S. § 44A-25(5).

**2. Civil Procedure— affidavit—service—day of summary judgment hearing**

The trial court erred by excluding an affidavit from consideration on summary judgment where the affidavit was mailed the day before the hearing and filed in superior court on the day of the hearing. Although this approach afforded no actual notice prior to the hearing, it was proper under the then applicable rules. N.C.G.S. § 1A-1, Rule 5(c) (1999).

### 3. Corporations— piercing corporate veil—material issue of fact

The trial court erred by granting summary judgment on a claim for piercing the corporate veil where defendants presented an affidavit asserting that their company was not undercapitalized and that company funds were not intermingled with personal funds, and plaintiff submitted an affidavit asserting undercapitalization, commingling of funds, and a failure to keep formal records.

Appeal by plaintiffs from orders dated 26 May 2000 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 21 August 2001.

*Bugg, Wolf & Wilkerson, P.A., by William J. Wolf, for plaintiff-appellants.*

*Safran Law Offices, by Todd A. Jones, for defendant-appellees Reis Trucking & Construction, Inc., Larry Reis, and Gwen M. Reis.*

*Maupin Taylor & Ellis, P.A., by Gilbert C. Laite, III and Kevin W. Benedict, for defendant-appellee Aegis Security Insurance Company.*

*Nigle B. Barrow, Jr., for defendant-appellees Ellis-Don Construction, Inc., Federal Insurance Company, and Travelers Casualty and Surety Company.*

GREENE, Judge.

Mr. Berry O. Monteau (Monteau) and his company, Bay Area Turf, Inc. (collectively Plaintiff) appeal 26 May 2000 orders granting summary judgment in favor of defendants Larry and Gwen Reis (the Reises), Ellis-Don Construction, Inc. (Ellis-Don), Travelers Casualty and Surety Company (Travelers), Federal Insurance Company (Federal), and Aegis Security Insurance Company (Aegis). Plaintiff also appeals a concurrent order sustaining objections by defendants Reis Trucking and Construction, Inc. (Reis Trucking), the Reises, and Aegis to an affidavit submitted by Plaintiff in opposition to summary judgment.

In November 1997, Plaintiff entered into an oral agreement with Reis Trucking, owned by the Reises, to perform certain estimating and bidding preparation services in return for $500 per week in

expenses plus a six percent commission on gross receipts from successfully bid projects that resulted in a contract award. Plaintiff, pursuant to its contract obligations, enabled Reis Trucking to submit bids to general contractors who were bidding on a project for the Raleigh Durham International Airport (RDU). On 9 January 1998, the RDU project was awarded to Ellis-Don as general contractor. Ellis-Don issued a labor and material payment bond to RDU on 13 January 1998, wherein Ellis-Don and its sureties, Federal and Travelers, promised "that every claimant . . . who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed . . . may sue on this bond . . . ." The bond defined a proper claimant as "one having a direct contract with the Principal [Ellis-Don] or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the [RDU] Contract." On 17 January 1998, Ellis-Don hired Reis Trucking as a sub-contractor, and a written contract to that effect was signed by Reis Trucking on 6 March 1998 and by Ellis-Don on 9 March 1998.

From 13 February 1998 to 15 February 1998, Plaintiff performed some project management work for Reis Trucking at the RDU site even though, as Plaintiff's deposition testimony shows, Plaintiff and Reis Trucking had not yet agreed on any compensation and there was no intention to apply any future salary retrospectively. Plaintiff's November 1997 agreement with Reis Trucking terminated on 6 March 1998. On 9 March 1998, Reis Trucking issued a subcontract labor and material payment bond to Ellis-Don mirroring the language of the Ellis-Don bond and underwritten by Aegis as surety. Reis Trucking had paid Plaintiff's expenses pursuant to their November 1997 agreement but failed to pay the six percent commission ($58,087.80) Plaintiff claims it earned by securing the RDU project. On 26 June 1998, Plaintiff sent Reis Trucking and the Reises written notice claiming payment under the payment bond issued by Reis Trucking. On 18 August 1998, Plaintiff sent a notice to Ellis-Don requesting payment under the January 1998 payment bond.

On 5 March 1999, Plaintiff filed a complaint seeking relief against Reis Trucking and the Reises for breach of contract and nonpayment under the March 1998 bond. The complaint alleged the Reises, as sole officers and directors of Reis Trucking, had operated Reis Trucking as their mere *alter ego*, grossly undercapitalized the business, and intermingled the company finances with their personal finances. Plaintiff prayed for relief in the amount of $58,078.80, "[t]he value of the labor

and services provided by Plaintiff to Reis [Trucking] on the [RDU] project." Plaintiff asserted Reis Trucking "became indebted to Plaintiff" for this amount "[u]pon Ellis-Don's acceptance of Reis[] [Trucking's] bid."

In addition, Plaintiff joined in its complaint Ellis-Don, Travelers, Federal, and Aegis as defendants. Plaintiff sought judgment against Ellis-Don as principal and Travelers and Federal as sureties under the January 1998 payment bond in the amount of $58,078.80 for work performed by Plaintiff on the RDU project. Plaintiff also requested relief against Aegis as surety under the March 1998 payment bond issued by Reis Trucking.

All defendants except Reis Trucking moved for summary judgment. In support of the motion, Ellis-Don submitted an affidavit denying Plaintiff performed any labor on the project. The Reises presented an affidavit denying any undercapitalization or intermingling of funds and stating that the Reises and Reis Trucking maintained separate bank accounts. On 22 May 2000, Plaintiff mailed to all defendants an opposing affidavit in which Monteau stated Reis Trucking was grossly undercapitalized, the Reises intermingled business and personal funds, committed to projects while lacking the capital to properly perform the work, failed to meet payroll obligations, and did not adhere to formal record keeping. On 22 May 2000 after the close of business, copies of Plaintiff's affidavit were also faxed to defendants' attorneys. The affidavit was filed on 23 May 2000, the day of the summary judgment hearing. Defendants Reis Trucking, the Reises, and Aegis objected to the affidavit on the grounds that service by mail and by fax on 22 May 2000 was not timely. The trial court sustained defendants' objection.

---

The issues are whether: (I) the work performed by Plaintiff under the November 1997 agreement can support a claim against any of the payment bonds issued by defendants; (II) Plaintiff's affidavit submitted in opposition to defendants' motions for summary judgment was timely served; and (III) genuine issues of material fact exist concerning Reis Trucking's valid corporate existence.

I

[1] Plaintiff argues the trial court erred in granting summary judgment in favor of defendants Ellis-Don, Federal, Travelers, and Aegis in respect to the payment bond claims. We disagree.

MONTEAU v. REIS TRUCKING & CONSTR., INC.

[147 N.C. App. 121 (2001)]

A sub-contractor's eligibility to receive reimbursement under a payment bond is determined by North Carolina's Statutory Lien and Charges Law. *See* N.C.G.S. ch. 44A (1999). It states:

> [A]ny claimant who has performed labor or furnished materials in the prosecution of the work required by any contract for which a payment bond has been given . . . and who has not been paid in full therefor . . . may bring an action on such payment bond . . . to recover any amount due him for such labor or materials . . . .

N.C.G.S. § 44A-27(a) (1999). The statute defines "labor or materials" as including "all materials furnished or labor performed in the prosecution of the work called for by the construction contract." N.C.G.S. § 44A-25(5) (1999).

In this case, Plaintiff's claim for $58,078.80 is based entirely on the November 1997 agreement, which was fully performed once Reis Trucking received a contract from Ellis-Don. Thus, none of the work performed by Plaintiff, which is the subject of this complaint, was "performed in the prosecution of the work" called for in the contract between Ellis-Don and Reis Trucking.[1] Accordingly, Plaintiff was not entitled to reimbursement under any payment bond issued by any of the parties in this case and summary judgment for Ellis-Don, Federal, Travelers, and Aegis is affirmed.

II

**[2]** Plaintiff argues the trial court erred when it excluded Monteau's opposing affidavit. We agree.

In this case, the issue of timely service of an opposing affidavit is governed by N.C. Gen. Stat. § 1A-1, Rule 56(c) (1999), the rule in effect at the time.[2] It provides that "[t]he adverse party prior to the

---

1. We acknowledge Plaintiff claims it provided some project management work for Reis Trucking on the RDU job site *after* award of the contract to Reis Trucking. The complaint makes no claim for compensation for this work and indeed the record reveals there was no agreement to pay any compensation for this work. Thus, this management work cannot support a claim under any payment bond.

2. The legislature adopted a new Rule 56(c) on 7 July 2000, which became effective 1 October 2000. It states:

> The adverse party may serve opposing affidavits at least two days before the hearing. If the opposing affidavit is not served on the other parties at least two days before the hearing on the motion, the court may continue the matter for a reasonable period to allow the responding party to prepare a response, proceed with

day of hearing may serve opposing affidavits." N.C.G.S. § 1A-1, Rule 56(c) (1999). When service is by mail, it is "complete upon deposit." N.C.G.S. § 1A-1, Rule 5(b) (1999). Filing of an affidavit is proper if it occurs "either before service or within five days thereafter." N.C.G.S. § 1A-1, Rule 5(d) (1999).

Plaintiff mailed Monteau's affidavit on 22 May 2000, the day before the hearing, and filed it with the Wake County Superior Court on 23 May 2000. Even though this approach afforded defendants no actual notice prior to the hearing, the service and filing were proper under the then applicable rules. *See Precision Fabrics Group v. Transformer Sales and Service*, 344 N.C. 713, 721, 477 S.E.2d 166, 171 (1996) (quoting 1 G. Gray Wilson, *North Carolina Civil Procedure* § 6-5 (2d ed. 1995)) (the rule permits service the day before the hearing " 'even where the moving party may not receive the affidavits before the hearing' "). Consequently, the trial court erred in excluding the affidavit.

### III

**[3]** Plaintiff argues the trial court erred in granting the Reises' motion for summary judgment. We agree.

Plaintiff's action for breach of contract included the Reises in their personal capacity. When a

> corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person.

*Henderson v. Fin. Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). Factors that may be considered in piercing the corporate veil under the "mere instrumentality rule" include inadequate capitalization and noncompliance with corporate formalities. *Atlantic Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 164, 398 S.E.2d 641, 643 (1990), *cert. denied*, 328 N.C. 569, 403 S.E.2d 506 (1991). Yet

> [i]t is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate

---

the matter without considering the untimely served affidavit, or take such other action as the ends of justice require.

N.C.G.S. § 1A-1, Rule 56(c) (2000).

privilege, suggest that the corporate entity attacked had "no separate mind, will or existence of its own" and was therefore [a] "mere instrumentality or tool" . . . .

*Glenn v. Wagner*, 313 N.C. 450, 458, 329 S.E.2d 326, 332 (1985).

In this case, the Reises presented an affidavit asserting that Reis Trucking was not undercapitalized and the funds of the company were not intermingled with their personal funds. Even if this affidavit is sufficient to shift the burden to Plaintiff, *see Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co.*, —— N.C. App. ——, ——, 550 S.E.2d 271, 273 (2001), Plaintiff submitted an affidavit asserting Reis Trucking was undercapitalized, the company funds were commingled with the personal funds of the Reises, and the Reises did not adhere to formal record keeping. Thus, a genuine issue of material fact was presented and summary judgment was not proper on Plaintiff's claim against the Reises in their individual capacity. *See id.*

Affirmed in part, reversed in part, and remanded.

Judges CAMPBELL and BRYANT concur.