JOHN S. CLARK COMPANY, INC. Plaintiff,

v.

UNITED NATIONAL INSURANCE COMPANY; Gallagher Bassett Services, Inc.; and the Travelers Indemnity Company, Defendants.

No. 1:02CV00576.

United States District Court, M.D. North Carolina.

Jan. 5, 2004.

Steven Douglas Hedges, Robert Harper Heckman, Gregory Todd Higgins, Benjamin Rushing Edwards, Nexsen Pruet Adams Kleemeier, PLLC, Greensboro, NC, for Plaintiff.

Steve Macon Pharr, Mark D. Boynton, Pharr & Boynton, PLLC, Winston–Salem, NC, Catalina J. Sugayan, Jill A. Van Wormer, Lord, Bissell & Brook, Chicago, IL, Samuel H. Poole, Jr., Steven D. Anderson, Cranfill, Sumner and Hartzog, L.L.P., Charlotte, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On June 19, 2002, John S. Clark Company, Inc. ("Plaintiff") filed this civil action in the General Court of Justice, Superior Court Division, Forsyth County, North Carolina, against United National Insurance Company ("United"), Gallagher Bas-

sett Services, Inc. ("Gallagher"), and National Catholic Risk Retention Group ("National"). Plaintiff's original complaint stated separate claims for relief against Defendants United, Gallagher, and National for breach of contract. Plaintiff's original complaint also stated additional claims for relief against Defendants United and Gallagher on the bases of negligence, bad faith, and unfair or deceptive trade practices in violation of North Carolina General Statute Section 75–1.1 *et seq.*

■ On July 17, 2002, Defendants United, Gallagher, and National properly filed a joint notice of removal to this court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. On June 16, 2003, Plaintiff filed an amended complaint that dropped all claims for relief against Defendant National and stated new claims for relief against The Travelers Indemnity Company ("Travelers") on the bases of breach of contract, negligence, bad faith, and unfair or deceptive trade practices in violation of North Carolina General Statute § 75–1.1 *et seq.* Before the court is Defendant United's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the following reasons, Defendant United's motion for partial judgment on the pleadings will be granted.

## FACTS

In considering Defendant United's motion for judgment on the pleadings, the court must accept all well-pleaded factual allegations in Plaintiff's complaint as true. *See* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 at 520 (2d ed.1990). This case arises out of Defendants' alleged failure to investigate, adjust, and indemnify Plaintiff's claims for losses incurred during the construction of a Parish Life Center and other associated renovations of the Saint Therese Catholic Church in Mooresville, North Carolina ("the construction project"). On January 25, 2000, Plaintiff entered into a Design–Build Agreement ("the Contract") with the Roman Catholic Diocese of Charlotte, North Carolina ("the Diocese"). Under the terms of the Contract, the Diocese agreed to obtain an insurance policy to cover the construction project that "include[d] as named insureds the Owner, Contractor, Architect/Engineer, Subcontractors and Sub subcontractors." (Am.Compl.¶ 6.) Specifically, the Contract obligated the Diocese to secure

1. On September 16, 2003, Defendant United submitted a suggestion of subsequently decided authority, pursuant to Local Rule 7.3, and attached a memorandum opinion issued by United States Magistrate Judge P. Trevor Sharp in *Nas Sur. Group v. Precision Wood Prods., Inc.,* 271 F.Supp.2d 776 (M.D.N.C. 2003). On September 18, 2003, Plaintiff responded to Defendant United's suggestion of subsequently decided authority by filing a motion to strike. Plaintiff contends that the subsequently decided authority is not controlling and inapposite to Defendant's motion for partial judgment on the pleadings for several reasons: (1) the authority suggested *is* the memorandum opinion of a United States Magistrate Judge of this District and is not controlling upon the court; (2) the authority suggested involves coverage issues arising un-

der a third-party comprehensive general liability insurance policy whereas the instant case involves coverage issues arising under a first-party all risks property insurance policy; and (3) the authority suggested involves coverage issues arising under South Carolina law whereas the *instant case involves coverage* issues governed by North Carolina law. While the court is ordinarily glad to receive guidance on difficult issues from almost any source, the court is not bound by the decisions of any courts other than the Fourth Circuit Court of Appeals and the United States Supreme Court. Decisions of other courts or other judges are not "controlling" under Local Rule 7.3. Therefore, Plaintiff's motion to strike Defendant United's suggestion of subsequently decided authority will be granted.

" 'all risk' insurance for physical loss or damage including without duplication of coverage at least: theft, vandalism, malicious mischief, transit, collapse, false work, temporary buildings, debris removal, flood, earthquake, testing and damage resulting from defective design, workmanship or materials." (*Id.*)

Pursuant to the terms of the Contract, the Diocese secured multiple layers of insurance to cover the construction project, including a Combined Property, Casualty, and Crime Insurance Policy ("the Policy") issued by Defendant United.[2] The terms and conditions of coverage listed in "Section I" of the Policy provided first-party all risks property insurance for the construction project to protect the property interests of both the Diocese and Plaintiff.[3] Under "Insuring Agreement A" in Section I of the Policy, Defendant United expressly agreed "to indemnify [the Diocese and Plaintiff] for all risks of physical loss or damage to Real and Personal property . . . occurring during the period of insurance." (Am.Compl.¶ 9, Ex. A.)

Section I of the Policy also listed a number of express terms labeled as "Conditions" that explained and qualified the scope of insurance coverage provided by the Policy. For example, a clause labeled "Valuation" stated that "[t]he Underwriters shall not be liable for loss or damage in excess of . . . the cost to repair, rebuild or replace the destroyed or damaged property in a condition equal to but not superior to or more extensive than its condition when new." (Am.Compl.Ex. A.) Other relevant terms and conditions of the Policy provided as follows:

7. ORDINANCE DEFICIENCY CLAUSE: Notwithstanding anything contained herein to the contrary, the Underwriters shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, in repairing or rebuilding, replacement of material to meet such requirements. If demolition is required to comply with such enforcement Underwriters shall also be liable for such additional costs.

8. EXPENSE TO REDUCE OR PREVENT LOSS: This Insurance also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this Insurance not exceeding, however, the amount by which the loss under this insurance is thereby reduced.

(Am.Compl.¶¶ 12, 13, Ex. A.)

On June 5, 2000, Plaintiff began work on the construction project. On January 19, 2001, portions of the construction project collapsed due to strong winds and poor construction. According to Plaintiff's complaint, other portions of the construction

---

**2.** Defendant United issued the Policy as a primary layer of insurance to cover the construction project. Under the terms of the Policy, Defendant Gallagher was named as a third-party claims administrator. In addition to the Policy issued by Defendant United, Defendant Travelers issued an Excess Property Policy and a Commercial General Liability policy as additional layers of insurance to cover the construction project itself and Plaintiff's liabilities while working on the construction project. Defendant United's motion for judgment on the pleadings does not directly concern Plaintiff's claims against Defendants Gallagher or Travelers or the scope of cover-

age provided by either insurance policy issued by Defendant Travelers.

**3.** The Policy issued by Defendant United promised coverage to the Diocese as well as "any person, organization, trustee, or estate to whom [the Diocese] is obligated by virtue of written tract or agreement to provide insurance such as is offered by this Insurance, but only in respect to operations by or on behalf of [the Diocese]." (Am.Compl.¶ 75, Ex. A.) Defendant United does not dispute that Plaintiff is an additional insured party for purposes of the all risks property insurance coverage afforded by Section I of the Policy.

project also sustained physical loss or damage due to faulty workmanship. Specifically, Plaintiff alleges that "the Project and/or the Property sustained physical loss or damage as a result of ... faulty workmanship, including but not limited to improperly located, sized, constructed, formed, filled and/or reinforced floor slabs, masonry walls, concrete walls, window openings and stairwells." (Am. Compl. ¶ 40.)

On or about January 21, 2001, Plaintiff notified Defendants United and Gallagher of its alleged losses. Plaintiff also notified Defendants United and Gallagher of its claims under the Policy to recover the costs to cleanup and reconstruct collapsed portions of the construction project as well as its claims under the Policy to recover the costs to repair other defectively built portions of the construction project and correct its own faulty workmanship. Thereafter, Plaintiff cleared and reconstructed the collapsed portion of the construction project.

Plaintiff also repaired all other defectively built portions of the construction project and corrected its own faulty workmanship. According to Plaintiff's complaint, "[t]he demolition, repairs and/or reconstruction performed by Clark to repair, remedy and rebuild the losses and damages, including, but not limited to, the masonry walls and window openings, were necessary to provide the structural and seismic integrity required for compliance ... with the North Carolina Statewide Building Code." (Am.Compl.¶ 51.) Plaintiff further alleges in its complaint that "the repairs and/or reconstruction ... were necessary to provide the structural and seismic integrity required to reduce or prevent the risk of future damage, failure, collapse or replacement of the Property." (Am.Compl.¶ 52.)

After Defendants United and Gallagher denied coverage under the Policy and failed to indemnify Plaintiff for its alleged losses, Plaintiff filed this lawsuit. Defendant United has acknowledged that a portion of Plaintiff's losses are covered by the Policy and has reimbursed Plaintiff for the costs to clean up and reconstruct portions of the construction project that collapsed due to strong winds and poor construction. Therefore, the narrow issue presented by Defendant United's motion for partial judgment on the pleadings is whether the terms of the Policy extend to cover the costs incurred by Plaintiff to repair defectively built portions of the construction project that suffered no wind damage and to correct its own faulty workmanship based on the facts as alleged in the pleadings.

### DISCUSSION

▮▮▮▮ A motion for judgment on the pleadings is determined by the same standard applied to a motion to dismiss for failure to state a claim upon which relief can be granted. *See Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *see also Pledger v. N.C. Dep't of Health & Human Servs., Dorothea Dix Hosp.,* 7 F.Supp.2d 705, 707 (E.D.N.C. 1998). In considering a motion for judgment on the pleadings, the court must view the facts presented in the pleadings and inferences drawn therefrom in the light most favorable to the non-moving party. *Edwards v. City of Goldsboro,* 178 F.3d 231, 248 (4th Cir.1999). The court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false. Wright and Miller, *supra,* at 520.

▮▮▮▮ When considering a defendant's motion for judgment on the pleadings, the court must base its decision solely on information obtained from the pleadings. *Dobson v. Central Carolina Bank and*

*Trust Co.*, 240 F.Supp.2d 516, 519 (M.D.N.C.2003) (citations omitted). Entry of judgment on the pleadings is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In other words, a defendant cannot succeed on a motion for judgment on the pleadings when allegations in the plaintiff's pleadings would permit recovery if supported by sufficient proof. Wright and Miller, *supra*, at 527–28.[4]

 A federal court sitting in diversity jurisdiction is bound to construe and apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under North Carolina law, the meaning of language used in an insurance policy is a question of law for the court. *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C.App. 506, 512, 428 S.E.2d 238, 241 (1993). An insurance policy is a contract and "the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). Because the intent of the parties is derived from the language in the policy, the language of the policy necessarily controls the interpretation of the policy. *See Nationwide Mut. Ins. Co. v. Mabe*, 115 N.C.App. 193, 198, 444 S.E.2d 664, 667 (1994), *aff'd*, 342 N.C. 482, 467 S.E.2d 34

(1996); *see also Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C.App. 788, 789, 403 S.E.2d 571, 572 (1991).

 "Under North Carolina law, the insured 'has the [initial] burden of bringing itself within the insuring language of the policy.'" *Wm. C. Vick Constr. Co. v. Pa. Nat'l Mut. Cas. Ins. Co.*, 52 F.Supp.2d 569, 580 (E.D.N.C.1999) (quoting *Hobson Constr. Co., Inc. v. Great Am. Ins. Co.*, 71 N.C.App. 586, 590, 322 S.E.2d 632, 635 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985)), *aff'd per curiam*, 213 F.3d 634, 2000 WL 504197 (4th Cir.2000). "Recovery will be allowed under a policy affording 'all risks' coverage for all losses of a fortuitous nature not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Avis v. Hartford Fire Ins. Co.*, 283 N.C. 142, 146, 195 S.E.2d 545, 547 (1973). In the instant case, Defendant United contends that Plaintiff's claims do not fall within the scope of coverage provided by the Policy because the repair of one's own faulty workmanship or negligent construction does not constitute "physical loss or damage" as required by the language of Insuring Agreement A in Section I of the Policy.

According to the North Carolina Supreme Court, the term "loss," as it relates to insurance, is defined as follows:

> [D]ecrease in value of resources or increase in liabilities; depletion or depre-

---

**4.** Federal Rule of Civil Procedure 12(c) provides: "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...." In its motion for partial judgment on the pleadings, Defendant United properly relied on the pleadings alone and did not offer any additional material in support of its motion. *See Eagle Nation, Inc. v. Market Force, Inc.*, 180 F.Supp.2d 752, 754 (E.D.N.C.

2001) (stating that exhibits attached to the complaint or answer should be treated as part of the pleadings). Although Plaintiff provided supplemental materials in opposition to Defendant United's motion for partial judgment on the pleadings, the court will exercise its discretion under Rule 12(c) and exclude those materials to avoid conversion of Defendant United's motion into a motion for summary judgment. Defendant United's motion will remain a motion for partial judgment on the pleadings.

ciation or destruction or shrinkage of value; injury, damage, etc. to property or persons injured; injury or damage sustained by insured in consequence of happening of one or more of the accidents or misfortunes against which insurer has undertaken to indemnify the insured; pecuniary injury resulting from the occurrence of the contingency insured against; word 'loss' implies that property is no longer in existence.

*Id.* at 153, 195 S.E.2d at 551 (quoting *Black's Law Dictionary* 1094 (4th ed.1968)). However, no North Carolina court has decided the specific issue of whether an insured's own faulty workmanship, without more, constitutes physical loss or damage to the insured property so that costs incurred to correct and repair defects caused by faulty workmanship are covered under an all risks property insurance policy. Therefore, the court must determine how the North Carolina Supreme Court would decide if confronted with this issue today. *See City of Gastonia v. Balfour Beatty Const. Corp., Inc.,* 222 F.Supp.2d 771, 773 (W.D.N.C.2002).

In *Trinity Indus., Inc. v. Ins. Co. of N. Am.,* 916 F.2d 267 (5th Cir.1990), the Fifth Circuit held that a builders risk policy insuring against "all risks of physical loss of or damage to the subject matter" did not cover costs incurred by an insured builder to correct and repair its own faulty workmanship. The *Trinity* court based its holding on the following rationale:

> That [an all risks policy] should cover accidents caused by the negligence of the insured does not justify reading such a policy to cover the costs of replacing or repairing crooked window frames or crooked door frames, even though the crookedness of the frame was undoubtedly the result of the insured's negligence.
>
> The language 'physical loss or damage' strongly implies that there was an initial

satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper. It would not ordinarily be thought to encompass faulty initial construction.

*Id.* at 270–71; *accord City of Burlington v. Indem. Ins. Co. of N. Am.,* 332 F.3d 38, 45 (2d Cir.2003) (concluding that coverage under policy insuring "against risks of direct physical loss or damage to the property insured" did not extend to cover costs of repairing defective welds that had not yet failed); *Whitaker v. Nationwide Mut. Fire. Ins. Co.,* 115 F.Supp.2d 612, 617 (E.D.Va.1999) (determining that "an 'all risks' policy's coverage of fortuitous losses does not mandate coverage for the repair of construction defects as part of a direct physical loss"); *Bethesda Place Ltd. P'ship v. Reliance Ins. Co.,* Civ. A. No. HAR 91–1719, 1992 WL 97342, at *3 (D.Md. Apr.22, 1992) (stating that "case law does not support the argument that a design defect in and of itself constitutes physical injury or damage to property from an external cause"); *Wolstein v. Yorkshire Ins. Co., Ltd.,* 97 Wash.App. 201, 211–13, 985 P.2d 400, 407–08 (1999) (concluding that coverage under policy insuring "against all risks of physical loss of or damage" did not extend to cover costs to repair faulty workmanship or faulty initial construction); *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.,* 930 S.W.2d 829, 835 (Tex.App.1996) (stating that all risks insurance policies need no express exclusion for damages due to faulty workmanship or faulty initial construction because "*Trinity* makes clear that these types of damages … are not covered to begin with").

The court believes that the North Carolina Supreme Court would find *Trinity* persuasive authority and would follow the rationale of the above-cited cases. In the

instant case, the defects in the construction project caused by Plaintiff's own faulty workmanship or negligent construction do not constitute physical loss or damage and do not fit within language of Insuring Agreement A in Section I of the Policy. Therefore, the court finds as a matter of law that Insuring Agreement A in Section I of the Policy does not cover the costs incurred by Plaintiff to correct and repair its own faulty workmanship or negligent construction.

Plaintiff contends that even if Insuring Agreement A in Section I of the Policy does not cover Plaintiff's claimed losses, the Expense to Reduce or Prevent Loss clause provides a separate and additional promise of indemnity for the costs Plaintiff incurred to correct and repair its own faulty workmanship or negligent construction in order to prevent future collapse of the construction project. Plaintiff also contends that its claims are covered by the Ordinance Deficiency Clause, which provides an independent promise of indemnity for the costs it incurred to bring the construction project into compliance with the North Carolina Building Code. Defendant United maintains that the Expense to Reduce or Prevent Loss clause and Ordinance Deficiency Clause are not separate insuring agreements and apply only when there is a covered loss under the terms of Insuring Agreement A in Section I of the Policy.

■■■ "Since the objective of construing an insurance policy is to ascertain the intent of the parties, the courts should resist piecemeal constructions and should, instead, examine each provision in the context of the policy as a whole." *DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C.App. 598, 602, 544 S.E.2d 797, 800 (2001) (citing

*Blake v. St. Paul Fire and Marine Ins. Co.*, 38 N.C.App. 555, 557, 248 S.E.2d 388, 390 (1978)). "When the policy language is unambiguous, 'courts have a duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used.'" *Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co.*, 145 N.C.App. 278, 281, 550 S.E.2d 271, 273 (2001) (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). In the instant case, the court concludes that both clauses must be read in the context of the Policy as a whole and that neither clause provides coverage for Plaintiff's claimed losses for correcting its own faulty workmanship.

Plaintiff contends that the court should broadly construe the Expense to Reduce or Prevent Loss clause as a promise of indemnity separate from Insuring Agreement A in Section I of the Policy. The Expense to Reduce or Prevent Loss clause provides that the Policy "also covers such expenses as are necessarily incurred for the purpose of reducing or preventing any loss under this insurance." (Am. Compl.¶ 13, Ex. A.) According to Plaintiff, the purpose of the Expense to Reduce or Prevent Loss clause is "consistent with the history and intent of similar, albeit more limited, clauses such as the 'sue and labor' clause." (Pl.'s Br. Opp'n Def.'s Mot. for Partial J. at 16.)

■■■ A sue and labor clause is a promise of indemnity typically found in marine insurance policies that covers expenditures made by the insured to prevent or mitigate a loss for which the insurer would be liable under the terms of the policy. *See Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 488, n. 11 (5th Cir.1960).[5] Although

---

5. The Fifth Circuit has explained the history and purpose of the sue and labor clause as follows:

Since an assured has the duty toward his underwriter to exercise the care of a prudent uninsured owner to protect insured

coverage under a sue and labor clause is sometimes described as "separate and supplementary to the basic insurance policy, a sue and labor clause does not extend or create coverage; the recovery under a sue and labor clause is tied irrevocably to the obligations undertaken by the insurers in the basic insurance policy." *S. Cal. Edison Co. v. Harbor Ins. Co.*, 83 Cal.App.3d 747, 758, 148 Cal.Rptr. 106, 112 (1978) (citations omitted). Whether sue and labor expenses are covered at all is determined by the general insuring provisions of the insurance policy. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 139 F.Supp.2d 1374, 1383 (S.D.Fla.2001) (citations omitted), *question certified by* 284 F.3d 1228 (11th Cir.2002), *certified question answered by* 845 So.2d 161 (Fla.2003), and *aff'd per curiam*, 331 F.3d 844 (11th Cir.2003).

No North Carolina court has construed a sue and labor clause or other provision similar to the Expense to Reduce or Prevent Loss clause. However, other jurisdictions have addressed the issue of whether expenses incurred by the insured to correct its own faulty workmanship or negligent construction are covered under a sue and labor clause, even though such expenses are excluded from coverage under an insurance policy's general insuring provisions. *See Edison*, 83 Cal.App.3d at 759–60, 148 Cal.Rptr. at 113 (concluding that a sue and labor clause, when read in conjunction with a design defect exclusion in the builder's risk policy, did not cover

expenses incurred by the insured builder to correct design defects because "only mitigation expenses which are for the primary benefit of the insurer are recoverable under a sue and labor clause"); *see also Swire*, 139 F.Supp.2d at 1385 (concluding that a sue and labor clause, when read in conjunction with a design defect exclusion in the builder's risk policy, did not cover expenses incurred by the insured builder to correct design defects because the builder acted directly and primarily to correct design defects in the building, even though the builder may have incidentally benefitted the insurer by possibly preventing collapse of the building at some unknown point in the future).

 According to the *Swire* court, sue and labor coverage applies only when the insured acts for the primary benefit of the insurer and the insured's actions closely correlate to a covered loss:

> [T]o be covered as reimbursable sue and labor expenses, those expenditures must be made for the benefit of the insurer in mitigating or preventing a covered loss. When determining whether the insured's actions are benefitting the insurer (and thus should be covered under the Sue and Labor Clause), a court looks not to whether the insured's actions may potentially benefit the insurer in some way, but rather, whether the actions correlate to an excluded loss (in which case the sue and labor expenses do not benefit the insurer because the loss

property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy, the clause undertakes to reimburse the assured for these expenditures which are made primarily for the benefit of the underwriter either to reduce or eliminate a covered loss altogether.

. . . . .

Against the background of this duty, the purpose of the clause is at least twofold. It is to (a) encourage and (b) bind the assured

to take steps to prevent a threatened loss for which the underwriter would be liable if it occurred, and when a loss does occur to take steps to diminish the amount of the loss. Its principal ultimate aim is clear. Prevention of loss is the very object in view. It contemplates the benefit of the insurers only.

*Reliance Ins. Co. v. The Escapade*, 280 F.2d 482, 488, n. 11 (5th Cir.1960) (internal quotations and citations omitted).

would not be covered) or correlate to a covered loss (in which case the actions benefit the insurer by reducing or eliminating the loss for which the insurer would be liable).

139 F.Supp.2d at 1385; *see also Edison,* 83 Cal.App.3d at 759, 148 Cal.Rptr. at 112. The court believes that the North Carolina Supreme Court would find *Edison* and *Swire* persuasive authority and would follow the rationale of both cases in construing the Expense to Reduce or Prevent Loss clause.

▆ In the instant case, Plaintiff cannot recover the costs it incurred to correct and repair its own faulty workmanship simply by alleging that it made corrections and performed repairs in order to prevent another collapse of the construction project at some unknown point in the future. As in *Edison* and *Swire,* the costs that Plaintiff incurred in correcting and repairing its own faulty workmanship may have incidentally benefitted Defendant United by preventing another collapse of the construction project. However, Plaintiff incurred such costs directly and primarily to correct and repair its own faulty workmanship or negligent construction—expenses which are not covered under the terms of Insuring Agreement A in Section I of the Policy. Therefore, the court finds that the Expense to Reduce or Prevent Loss clause does not cover the costs incurred by Plaintiff to correct and repair its own faulty workmanship or negligent construction because such expenses are not covered by Insuring Agreement A in Section I of the Policy.

▆ Moreover, the Ordinance Deficiency Clause does not cover the costs incurred by Plaintiff to correct defectively built portions of the construction project in the absence of a covered loss under the terms of Insuring Agreement A in Section I of the Policy. The Ordinance Deficiency Clause unambiguously states that Defendant United "shall be liable also for the loss occasioned by the enforcement of any state or municipal law, ordinance or code, which necessitates, *in repairing or rebuilding,* replacement of material to meet such requirements." (Am.Compl.¶ 12, Ex. A) (emphasis added). The language of the Ordinance Deficiency Clause corresponds to the language of Insuring Agreement A in Section I of the Policy in that the phrase "in repairing or rebuilding" also strongly suggests that an initial satisfactory state was changed by some external event into an unsatisfactory state.

When read in context with Insuring Agreement A in Section I of the Policy, the Ordinance Deficiency Clause provides coverage after a covered loss has already occurred. For example, the Ordinance Deficiency Clause would be triggered when an insured repaired or rebuilt damaged or destroyed property and incurred additional costs because the insured necessarily used replacement materials to comply with any state or municipal law, ordinance or code. Reading the Policy as a whole, the court finds that in the absence of physical loss or damage under the terms of Insuring Agreement A in Section I of the Policy, the Ordinance Deficiency Clause does not cover the costs incurred by Plaintiff to correct defectively built portions of the construction project.

Even if Plaintiff could support the facts alleged in its complaint with sufficient proof, Plaintiff is not entitled to recover its claimed losses under either Insuring Agreement A in Section I of the Policy, the Ordinance Deficiency Clause, or the Expense to Reduce or Prevent Loss clause. The Policy does not provide coverage for the costs incurred by Plaintiff to rebuild undamaged portions of the construction project in order to correct its own faulty workmanship. Therefore, Defendant

United's motion for partial judgment on the pleadings will be granted.

## CONCLUSION

For the foregoing reasons, Defendant United's motion for partial judgment on the pleadings will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.